IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER J. MILLER, DARIN E. MILLER SECOND AMENDMENT FOUNDATION, INC., ILLINOIS STATE RIFLE ASSOCIATION, and ILLINOIS CARRY, <br><br> Plaintiffs, <br><br> v. <br><br> MARC D. SMITH, in his official capacity as Acting Director of the Illinois Department of Children and Family Services, and KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois, <br><br> Defendants. | Case No. 18 cv 3085 <br><br> Hon. Sue E. Myerscough Presiding Judge <br><br> Hon. Tom Schanzle-Haskins Magistrate Judge |

**DEFENDANTS' MOTION TO COMPEL DISCOVERY REGARDING
MILLER PLAINTIFFS' FIREARMS**

**Oral Argument Requested**

## Introduction

Under the Illinois Child Care Act of 1969, 225 Ill. Comp. Stat. Ann. § 10/1 *et seq.*, and related regulations protecting the safety of children, foster parents and day care home licensees in this State must store firearms and ammunition separately and in locked containers. Handguns are prohibited entirely on the premises of a day care home.

Plaintiffs Jennifer and Darin Miller, who are foster parents and day care home licensees, allege that this statute and regulations harm them, *see* Am. Compl. ¶¶ 15, 16, 31, and argue they are unconstitutional. *See* Am. Compl. ¶¶ 49-50. Despite placing their ability to possess and carry loaded firearms and handguns in their home and home business squarely at issue in their pleading, the Millers now refuse to comply with discovery requests for information about those very firearms. This information is necessary to understand how the statute and regulations apply to the Millers, and whether these rules operate to "harm" the Millers.

The Millers have objected generally that the Requests are irrelevant, harassing, and improper. To the contrary; this information is directly relevant to the Millers' allegations, and as foster parents and day care home licensees, the Millers have previously consented to disclosure of this information to the State.

Defendants respectfully request the Court to issue an order under Fed. R. Civ. P. 37(a) directing the Millers to provide within five (5) business days complete written responses to Interrogatory Nos. 2, 3, and 8 in Defendants' First Set of Interrogatories, and produce records responsive to Request Nos. 13-15 in Defendants' First Set of Requests for Production.

## Factual Background

On April 16, 2018, the Millers, along with the Illinois State Rifle Association, the Second Amendment Foundation, and Illinois Carry, filed this action challenging certain provisions of the Illinois Child Care Act and related Department of Children and Family Services ("DCFS")

1

regulations restricting possession and storage of firearms by licensed foster parents and day care home licensees. *See* Am. Compl. ¶¶ 30, 29[1], 36. The challenged provisions require, with certain exceptions, that all firearms in a licensed foster home or day care home be kept in locked storage, with ammunition locked and stored separately. *Id*. In addition, handguns are prohibited in a day care home. *Id.* ¶¶ 30, 29. Plaintiffs allege that but for their fear of losing their licenses as foster parents and day care home licensees, they would "possess and carry loaded and functional handguns for self-defense and defense of family." Am. Compl. ¶ 16. They argue that these provisions "violate the Plaintiffs' individual right to possess and carry firearms for self-defense and defense of family, both inside and outside of their home, as secured by the Second Amendment to the United States Constitution." *Id.* ¶¶ 43, 44. Defendants contend that the regulations are essential to protect children in foster care and day care from firearms-related injuries (among other safety concerns). Plaintiffs' challenge is both facial and as applied to the Millers. *Id*. They seek injunctive and declaratory relief to bar enforcement.

On October 4, 2019, Defendants served Requests for Production ("RFPs") and Interrogatories ("ROGs") on the Millers. *See* Exhibit A (October 4, 2019 email from G. Helfrich to D. Sigale). Three of the RFPs (numbers 13-15) and three of the ROGs (numbers 2, 3, and 8, together with RFPs 13-15, the "Requests") sought information related to the firearms and ammunition that the Millers own or keep in their home, including handguns.[2] *See* Exhibit B (Miller Responses to Defendants' First Set of Requests for Production) at 7-8; Exhibit C (Miller Responses Defendants' First Set of Interrogatories) at 3-4, 6.

---

[1] The paragraphs in the Amended Complaint are not numbered sequentially.
[2] Notably, Defendants have confined their Requests to information about firearms that are subject to the DCFS regulations—that is, handguns and firearms kept in the Millers' home. Defendants have not asked about firearms the Millers may keep and store elsewhere.

Although responses were initially due on November, 4, 2019, Defendants agreed to extend the deadline to December 24, 2019. When they finally responded, the Millers objected to providing nearly all of the requested information. They claimed, without explanation, that the Requests were "irrelevant, harassing, and improper." *See* Ex. B at 7-8; Ex. C at 3-4, 7. They also asserted that the Requests were an attempt to obtain information to which the State has no right because Illinois does not maintain a firearms registry. *Id*. However, the Millers consented to provide most of this information to the State when they agreed to become foster parents and day care home licensees. *See* Am. Compl. ¶¶ 38-39 (admitting that the Millers were obligated to provide a list of all firearms in their home to DCFS).

Defendants needed this information to prepare for and conduct depositions of the Millers, scheduled for January 16 and 17, 2020. The parties conferred on December 31, 2019 and January 2, 2020 in an attempt to resolve this issue. Following a call with the Court on January 2, 2020, the Court instructed Defendants to file the instant Motion to Compel.[3] The Millers' depositions have been continued pending resolution of this dispute.

**Argument**

Defendants' Requests seek information that it is well within the scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure. This information is relevant to several issues, including: Plaintiffs' standing to bring a Second Amendment challenge; the applicability of the Second Amendment to the conduct and provisions at issue; Defendants' defense that the laws and regulations fit closely with the State's strong public interest in child safety; the precise nature of the nature of the relief sought by Plaintiffs; and Defendants' ability to evaluate expert testimony.

---

[3] Defendants do not hereby waive their right to seek relief from the Court regarding other discovery disputes. At this time, however, the parties believe that other disputes related to the Millers can be resolved without the Court's intervention. The parties have not yet met or conferred regarding discovery served on the organizational Plaintiffs.

Moreover, the Plaintiffs fail entirely to explain how Defendants' Request could be harassing or improper given that Plaintiffs themselves put their firearms at issue by bringing this action and have already consented to provide this information to the State as part of their licensure as foster parents and day care home operators.

## Legal Standard

Rule 26(b) of the Federal Rules of Civil Procedure permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Furthermore, "the test for relevance in the discovery context is very broad. A request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action." *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 2015 WL 10937559, at *3 (E.D. Wis. Apr. 10, 2015). "'[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *3 (N.D. Ill. Apr. 17, 2019) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978))*; see also* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2008 (3d ed. 2019) ("[O]ne of the purposes of discovery is to identify and narrow the issues."). Defendants' Requests seek relevant, non-privileged information related both to the Millers' claim and to their own defenses, including but not limited to standing. The Requests therefore fall squarely within the scope of Rule 26(b).

Furthermore, "[t]he party opposing discovery bears the burden of showing why it should be disallowed." *Belcastro*, 2019 WL 1651709, at *3 (N.D. Ill. Apr. 17, 2019). Plaintiffs cannot meet this burden. Plaintiffs have put this information at issue by their pleadings, information they

4

have already consented to disclose to DCFS. Accordingly, Defendants are entitled to an order compelling Plaintiffs to respond to the Requests in full.

**A.    Defendants' Requests Are Relevant To Several Claims And Defenses In This Action.**

    **1.    Defendant's Requests are Relevant to the Miller's Standing to Bring a Challenge under the Second Amendment.**

Information about the Millers' firearms is relevant to whether they have standing to bring a challenge under the Second Amendment. "Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir. 2011) (citing *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir.2010)). Standing serves as a limitation on the jurisdiction of the federal courts. *See Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990) (Under Article III, "the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process."). Defendants have asserted standing as an affirmative defense in this case. *See* Defs.' Ans. and Aff, Defs. to Am. Compl. at 17.

The Second Amendment protects "an individual right to keep and bear arms, the core component of which is the right to possess operable firearms—handguns included—for self-defense, most notably in the home." *Ezell*, 651 F.3d at 689 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). At the most basic level, Defendants' Requests relate to whether the Millers own a firearm that could reasonably be understood as suitable for self-defense. If they do not, then it may be that their core Second Amendment rights are not implicated here, and standing is lacking. *Cf. Kolbe v. Hogan*, 849 F.3d 114, 138 (4th Cir. 2017) (Maryland ban on assault weapons and high-capacity magazines did not severely burden core protection of Second Amendment because

5

such weapons were not "suitable[] for self-protection.").[4] As a corollary, and to clarify the issues in this case, Defendants' Requests seek information about other firearms the Millers own to make a clear record that those other firearms, if there are any, are not the basis of the Millers' standing.

### 2. The Requests are Relevant to the Second Amendment Challenge Itself.

Beyond the Millers' standing to bring their Second Amendment claim, the Requests seek information relevant to the claim itself.

To begin with, *Heller* makes clear that not all firearms, nor all possible uses of firearms, come within the Amendment's protections. For example, the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 625. Nor does it protect "dangerous and unusual weapons." *Id.* at 627. Following *Heller*, lower courts have allowed regulation of specific types of weapons. *See, e.g.*, *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 407 (7th Cir. 2015) (upholding municipal ban on "possession of assault weapons or large-capacity magazines (those that can accept more than ten rounds)").

Defendants will be unfairly hampered in their defense if they are not able to explore whether this case is truly about the "core" of the Second Amendment or in some way closer to the "margins." *See Ezell*, 651 F. 3d at 708. This distinction is significant for Defendants' defense: "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and

---

[4] Standing is not an uncontroversial matter in this litigation. In their discovery responses, the Millers seem to state that Darin Miller and Jennifer Miller do not both seek to engage in the same conduct, with Darin seeking to engage in a broader range of conduct than Jennifer. *See* Ex. C at 6 (Answer to ROG 6 – If permitted, Plaintiffs would "keep a handgun loaded on Plaintiffs' persons or in a locked safe in case of a self-defense emergency, or consistent with Darin's concealed carry license . . ."). This difference raises the possibility that their injuries are not the same. Such confusion at this early stage of the proceedings underscores the importance of discovery to clarifying the issues in the case.

its end" but restrictions on "activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified." *Id*.

Defendants are entitled to know whether the firearms at issue are lawful and protected. *Cf. Heller*, 554 U.S. at 635 (ban on "lawful firearm[s]" was unconstitutional). The Millers assert—without identifying any firearms—that the firearms they own are legal. *See* Ex. C at 4 (Answer to ROG 2) ("Plaintiff states he has no illegal firearms, and is in compliance with all state laws, including the statutes and regulations at issue in this lawsuit."). This may be true, but Defendants should be allowed to explore facts—not Plaintiff's conclusions—related to this issue.

In addition, the Millers have brought an as-applied challenge, in which the Court must "examine the facts of the case before [it] . . . and not any set of hypothetical facts under which the statute might be unconstitutional." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012) (citing *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir.2011)). Even as to the Millers' facial challenge, "the Supreme Court insists that, with few exceptions, statutes and regulations be evaluated in operation ('as applied') rather than peremptorily." *Berron v. Illinois Concealed Carry Licensing Review Bd.*, 825 F.3d 843, 846 (7th Cir. 2016) (requiring further development of factual record in facial challenge to concealed carry regulations).

The above principles require the Court consider how the challenged provisions affect the Millers. Defendants' Requests are aimed squarely at that inquiry. Information about the firearms in the Millers' home and their ownership of handguns will contribute directly to the factual record showing how the statutes and regulations operate. Indeed, it is hard to see how such a record could be developed without this information.

### 3. The Requests are Relevant to Defendants' Defense that the Challenged Provisions are a Close Fit with Child Safety.

If the challenged provisions burden the Millers' core Second Amendment rights, Defendants are required to establish a "close fit" between those provisions and the strong public interest, i.e. the safety of children, that justifies them. *Ezell*, 651 F. 3d at 708-09. *See also* S*able Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989) (The government has a "compelling interest in protecting the physical . . . well-being of minors."). That is, Defendants will be required to show that the statutes and regulations advance the safety of children, including in the Miller home. This showing must "rigourous." *Ezell*, 651 F. 3d at 708.

To demonstrate this "close fit," Defendants should be allowed to gather basic information about the firearms in the Miller home, their safety features, how they are stored, and when and how they are accessed. This information will allow Defendants to illustrate to the Court how the statutes and regulations make the Miller home safer, and how the danger to children would increase without them. Defendants anticipate, moreover, that they will engage experts to opine on issues of safety. It is essential that Defendants be able to provide those experts with factual information that will allow them to offer the Court a reliable, relevant assessment of the Miller home. *See* Fed. R. Evid. 702 (expert testimony must be reliable, relevant, and "help the trier of fact to understand the evidence or to determine a fact in issue.").

In lieu of a full response to ROG 3, the Millers have asserted that "any firearms in Plaintiffs' possession are stored unloaded in a locked safe to which only Plaintiffs have access, in a room to which only Plaintiffs have access, unless on Plaintiff Darin Miller's person or stored in a locked container in his vehicle consistent with his concealed carry license." Ex. C at 4. This limited information is insufficient. It doesn't inform Defendants whether there is one firearm in the home or a hundred, much less the types of weapons—facts that could potentially have important

ramifications for child safety. Further, discovery itself may reveal issues relevant to safety that are not apparent at the outset of Defendants' inquiries. Permitting Plaintiffs to dole out only such information as they choose, without allowing Defendants to ask questions, would severely prejudice Defendants' ability to mount a defense.

    **4.**    **The Requests Seek Information Relevant to the Relief Requested By Plaintiffs.**

Defendants are entitled to clarify the exact nature of the relief sought. In their prayer for relief, Plaintiffs have asked for a total bar to enforcement of the challenged provisions. Am. Compl. at 16. Such a bar would allow Plaintiffs to have loaded firearms anywhere in their home at any time, whether foster children or day care children are present. However, allegations elsewhere in the Complaint suggest that Plaintiffs seek more narrow relief than they have actually requested—the right to carry *certain* loaded firearms within certain limitations. *See, e.g.*, *id*. ¶ 16. Defendants' Requests seek information that would meaningfully allow them to probe this central issue. Having muddied the waters, Plaintiffs should not be allowed to withhold information that would permit Defendants to determine clearly and with specificity what the Millers believe they should be allowed to do with each of their firearms.

    **5.**    **The Requests are Relevant to Expected Expert Testimony.**

Plaintiffs have alleged that they wish to "possess and carry loaded and functional handguns for self-defense and defense of family." Am. Compl. ¶ 16. Defendants therefore anticipate that Plaintiffs will disclose an expert who will opine on the Miller's ability to defend themselves and their family under the current regulations. Information about the Millers' firearms may therefore be relevant both to the Court's ability to play its gatekeeping role and Defendants' ability to challenge the expert's conclusions.

Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court acts "as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a

9

reliable foundation and is relevant to the task at hand." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778–79 (7th Cir. 2017) (quoting *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017) and affirming exclusion of expert witness). This gatekeeping function is necessary as "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. Moreover, "the gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (citing *Daubert*, 509 U.S. at 591) (internal quotation marks omitted).

To perform its function properly, the Court will need a clear understanding of whether the expert's opinion is based on or applicable to the facts as they exist in the Miller household. Defendants' Requests will assist in elucidating these facts, ensuring that any expert testimony can be properly scrutinized and vetted. In addition, Defendants themselves need to be able to explore the "soundness" and "correctness" of the expert's conclusions to be able to present these issues to the trier of fact. *Gopalratnam* 877 F.3d at 781 ("soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions" are matters for the trier of fact, not the Court in its gatekeeping role). Defendants' Requests seek information that will allow them to explore these issues with particularity.

**B.      Plaintiffs' Have Not Met Their Burden to Show Why the Discovery Should not be Allowed.**

Plaintiffs should be compelled to respond to Defendants' Requests because they seek information that is "relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b). Plaintiffs bear the "burden of showing why [the discovery] should be disallowed." *Belcastro*, 2019 WL 1651709, at *3 (N.D. Ill. Apr. 17, 2019), and they have not met it. Indeed, other than their bare objections, Plaintiffs have proffered no reason why the discovery should not be permitted.

Plaintiffs' objections on grounds of relevance are clearly not well-founded for the reasons set out above. Furthermore, Plaintiffs objections that Defendants' Requests are "improper," "harassing," and "merely an attempt to obtain information to which the State has no right," *see* Ex. B at 7-8, Ex. C at 3-4, 7, are equally groundless.

Plaintiffs have offered no basis whatsoever for their assertion that the Requests are improper or harassing. *See id*. "If the party from whom the [information is] requested objects to [its] production, that party has the burden to show why a discovery request is improper." *United Auto. Ins. v. Veluchamy*, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010). *See also In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997) ("The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules."). Plaintiffs have not met their burden, and these objections should be considered waived. *See Veluchamy*, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010) (deeming unsupported objections waived).

Plaintiffs' claim that these Requests are an attempt to obtain information to which the State has no right is both groundless and nonsensical. First, in their own pleading, Plaintiffs admit that "[t]he [Foster Family Firearms Agreement] requires the prospective foster parents to provide the IDCFS with a list of all firearms in the home including their location, a list of all ammunition in the home including its location . . ." Am. Compl. ¶ 38. They further allege that "[t]he Millers were required to sign and abide to the content of . . . the FFFA to continue as a foster home." *Id*. ¶ 39. "[P]arties are bound by their pleadings." *Lesniak v. Bank of Am., N.A.*, 169 F. Supp. 3d 766, 771 (N.D. Ill. 2015). Second, Plaintiffs are required to submit to, and have submitted to, inspections of their firearms by DCFS. *See* Exhibit D (May 23, 2016 Miller Foster Family Licensing Application) at 4 (filed under seal); Exhibit E (DCFS May 8, 2019 License File – Contact/License Entry Note)

(filed under seal). Plaintiffs are not being asked to disclose to the State anything substantially different from what they are already required to disclose; they are simply being asked to do it in discovery. As it was the Millers who brought this litigation, this is a more than reasonable request.

## Conclusion

Defendants Requests seek information that is relevant to several of the claims and defenses in this matter and therefore within the scope of permissible discovery under Rule 26(b)(1). Plaintiffs have not met their burden to show why these entirely proper Requests should not be allowed. For these reasons, the Court should order Plaintiffs to respond in full to Defendants' Requests, and to do so promptly so that the parties can proceed with the depositions of the Millers.

WHEREFORE, the Parties respectfully ask this Court to grant their Motion and to issue an order directing the Millers to provide within five (5) business days complete written responses to Interrogatory Nos. 2, 3, and 8 in Defendants' First Set of Interrogatories, and produce records responsive to Request Nos. 13-15 in Defendants' First Set of Requests for Production. Defendants request oral argument on this Motion to respond to any changes Plaintiffs may attempt to make in their Response to their allegations or request for relief.

January 17, 2020

Respectfully submitted,

/s/ Gretchen E. Helfrich

Gretchen E. Helfrich
Matthew V. Chimienti
Aaron P. Wenzloff
Assistant Attorneys General
100 W. Randolph St., 11th Floor
Chicago, IL 60601
(312) 814-8570
E-mail: ghelfrich@atg.state.il.us
E-mail: mchimienti@atg.state.il.us
E-mail: awenzloff@atg.state.il.us

*Counsel for Defendants*

**Rule 37(a)(1) Certification**

I certify that I conferred in good faith with Plaintiffs' counsel in an attempt to resolve this dispute before filing this Motion.

    s/ Gretchen E. Helfrich

    *One of Defendants' Counsel*

## CERTIFICATE OF SERVICE

I, Gretchen E. Helfrich, an attorney, certify that on January 17, 2020, I caused the foregoing **Motion to Compel Discovery Regarding Miller Plaintiffs' Firearms** to be filed electronically via the Court's CM/ECF system and thereby served on all counsel of record.

/s/ Gretchen E. Helfrich  
Assistant Attorney General
