# EXHIBIT 13
*Second Amendment Foundation v. Walker*
# Dismissal Order

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT FOUNDATION, INC. AND ILLINOIS RIFLE ASSOCIATION, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 16-cv-2214 |
| BEVERLY J. WALKER, in her official capacity as Acting Director of the Illinois Department of Children and Family Services, and LISA MADIGAN, in her official capacity as Attorney General of the State of Illinois, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiffs Illinois State Rifle Association and Second Amendment Foundation, Inc. filed their Second Amended Complaint (#33) on October 30, 2018. Defendants Beverly J. Walker and Lisa Madigan, ("Defendants") in their official capacities as the Acting Director of the Illinois Department of Children and Family Services ("Department") and Attorney General of the State of Illinois, respectively, filed a Motion to Dismiss (#34) and supporting Memorandum (#35) on November 20, 2018. Plaintiffs filed their Response (#37) and supporting exhibits on December 4, 2018. The

1

Defendants filed their Reply (#39) on December 21, 2018. Defendants' Motion is ripe for ruling. For the following reasons Defendants' Motion is GRANTED.

## I. BACKGROUND

On July 12, 2016, Kenneth Shults, Colleen Shults, the Second Amendment Foundation, Inc., and the Illinois State Rifle Association filed this action against then-director of the Department George Sheldon, in his official capacity, alleging that the Department's rule regarding storage of firearms in foster homes violated their Second and Fourteenth Amendment rights. Relevant here, the Shultses alleged that they were licensed foster parents with a foster child placed in their home, and "would possess loaded and functional firearms for self-defense and defense of family, but refrain from doing so because they fear" reprisals due to the challenged provisions. The organizational Plaintiffs alleged standing on behalf of themselves and their members. The only individual members identified were the Shultses.

This court denied Walker's Motion to Dismiss on January 10, 2017, and the case proceeded to discovery.

On August 14, 2018, Plaintiffs filed an Amended Complaint (#26) against Defendants Walker (who succeeded Director Sheldon) and Madigan in their official capacities. The Shultses alleged that they remained licensed foster parents, but that they no longer had a foster child placed in their home. As in the initial complaint, the organizational Plaintiffs asserted standing on their own behalf and on behalf of their members. Again, the only members identified as foster parents were the Shultses.

2

Shortly thereafter, the Department learned that the Shultses had relinquished their Illinois foster license in January 2018 and had indicated to the licensing representative at that time that they did not intend to renew their license for at least two years. Accordingly, the Department filed an Emergency Motion (#30) alerting the court to these findings. Plaintiffs then filed a Motion (#31) to voluntarily dismiss the Shultses from the action, which was granted by text order on October 17, 2018. In that same order, the court granted the organizational Plaintiffs leave to file a second amended complaint. On October 30, 2018, the current Plaintiffs filed their Second Amended Complaint (#33) against Walker and Madigan in their official capacities.

That brings the case to the operative pleading. The following facts are drawn from the Second Amended Complaint, except as otherwise noted.

The Second Amended Complaint alleges that the Department's rule related to storage of firearms in foster homes violates the Second and Fourteenth Amendments. With respect to standing, Plaintiffs—each a non-profit membership organization bringing this action on behalf of itself and its members—allege as follows.

The purposes of the Illinois State Rifle Association "include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation," whereas the purposes of the Second Amendment Foundation "include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms."

3

Plaintiffs allege they "have members who are licensed foster parents in the State of Illinois." They provide no information or identifiers about specific members within, or attached to, the Second Amended Complaint. According to the Second Amended Complaint these members "would possess and carry loaded and functional concealed handguns in public for self-defense, but refrain from doing so because they fear their foster children being taken away from them by the State, and/or being prohibited from being foster parents in the future" due to the challenged provisions.

Attached to Plaintiffs' Response are several documents. One attachment is a declaration of Darin E. Miller and Jennifer J. Miller ("the Millers"). In their declaration the Millers state that they are married, each holds an Illinois FOID card and concealed carry license, they are licensed foster parents, they have a foster child placed in their home, and they are members of the Illinois State Rifle Association and the Second Amendment Foundation.

Also attached is a declaration of Jed R. Davis and Melissa A. Davis ("the Davises"). In their declaration the Davises aver that they are married, each has an Illinois FOID card, they are licensed foster parents, they have had multiple foster child placements in the past and intend to continue to do so, and they are members of the Illinois State Rifle Association and the Second Amendment Foundation. Jed avers that he holds a concealed carry license.

## II. ANALYSIS

A. <u>Legal Standards</u>

"Article III restricts the judicial power to actual 'Cases' and 'Controversies,' a limitation understood to confine the federal judiciary … to redress or prevent actual or imminently threatened injury." *Ezell v. City of Chi.*, 651 F.3d 684, 694-95 (7th Cir. 2011). "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Id.* (citing *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)).

Standing is comprised of three elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). "[P]articularized" injury "must affect the plaintiff in a personal and individual way." *Id.* (internal citation omitted). For an injury to be "concrete," it must be "real" and "not abstract." *Id.*

Under Rule 12(b)(1), parties may move to dismiss the complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> Because *Lujan* mandates that standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," it follows that the *Twombly–Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction. *Lujan,* 504 U.S. at 561, 112 S. Ct. 2130. Therefore, we join many of our sister circuits and hold that when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s "plausibility" requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6).

*Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). Defendants have raised a facial challenge to Plaintiffs' Second Amended Complaint. Analysis of Plaintiffs' additional factual submissions under the factual challenge standard appears in Section B.2, *infra*.

B. <u>Whether Plaintiffs Have Standing</u>

An organization asserting standing "can do so either on behalf of itself or on behalf its members." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013). The court will first discuss whether the Plaintiffs have alleged standing on their own behalf, then will discuss whether they have standing on behalf of their members, i.e., associational standing.

1. *Whether the Plaintiffs Have Standing on Their Own Behalf*

To bring an action in its own right, an organization must itself meet the three requirements of standing outlined above. *Id.*

Defendants argue Plaintiffs have failed to allege an adequate injury to confer standing. Plaintiffs counter, in their Response:

> SAF [Second Amendment Foundation] and ISRA [Illinois State Rifle Association] educate, research, and publish about gun control and its consequences. They have to educate their members, and the public, about the government's enforcement of gun laws. When people have questions about the government's firearms policies in Illinois, they turn to SAF and ISRA. The government's enforcement of the challenged provisions thus directly impacts the organizations.

The court finds that Plaintiffs do not allege an adequate injury to confer standing. The Second Amendment Foundation asserts in the Second Amended Complaint that the interests involved in this lawsuit "are germane to [its] organizational purposes" of "education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms." The Illinois State Rifle Association, applying the same reasoning, identifies its purposes as "securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation." These interests, which are primarily ideological, do not suffice to establish standing. See 33 Fed. Prac. & Proc. Judicial Review § 8345 (injury alleged "cannot be merely 'ideological'—i.e., damage to the 'special interest' of an organization does not qualify as an injury for constitutional standing"). As the Seventh Circuit has explained, "[a]n abstract interest in a matter never has been considered a sufficient basis for the

7

maintenance of—or the continuation of—litigation in the federal courts." *Muro v. Target Corp.*, 580 F.3d 485, 491 (7th Cir. 2009); see also *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) ("[A]n interest in the underlying law does not equal an injury.").

Plaintiffs' theory of injury as articulated in their Response – that having to use resources to train and educate their constituents is a financial burden – does no more to support this court finding a concrete injury to Plaintiffs than do the allegations in the Second Amended Complaint. Plaintiffs cite *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), for the proposition that when a group is forced to spend resources, devoting its time and energy to dealing with certain conduct, it has standing to challenge that conduct.[1] Recent Seventh Circuit precedent shows *Havens* provides Plaintiffs no refuge.

> In *Havens*, a non-profit organization dedicated to ensuring open housing brought claims under the Fair Housing Act alleging injury on the basis of having expended significant resources investigating and reporting racially-discriminatory housing practices by a realty company in a suburb of Richmond, Virginia. See *id*. at 369, 102 S. Ct. 1114. The organization specifically contended that the realty company's practice of steering apartments on the basis of race hindered its institutional efforts to assist prospective tenants in realizing equal access to housing. See *id.* at 379, 102 S. Ct. 1114. The Court concluded that these allegations were sufficient to confer standing on the organization, reasoning that "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." *Id.*

*Keep Chicago Livable v. City of Chi.*, 913 F.3d 618, 624–25 (7th Cir. 2019) (citing *Havens*, 455 U.S. 363). The Seventh Circuit continued:

---

[1] Plaintiffs also cite *Bellwood v. Dwivecli*, 895 F.2d 1521, 1526 (7th Cir. 1990). *Bellwood* followed *Havens*, and the facts and analysis in *Bellwood* are practically identical to *Havens*. The court's application of *Havens* therefore also addresses Plaintiffs' references to *Bellwood*.

8

> The organizational injury alleged by Keep Chicago Livable is much less direct than the one before the Supreme Court in *Havens*. The original and amended complaints sound their contention of injury in no more than Keep Chicago Livable finding it difficult to advocate and educate on home-sharing in Chicago before a court rules on the individual plaintiffs' challenges to the constitutionality of the Ordinance. Nary a word in either complaint tethers any particular requirement of the Ordinance to a specific harm to the organization.

*Keep Chicago Livable*, 913 F.3d at 625. See also *Plotkin v. Ryan*, 239 F.3d 882, 886 (7th Cir. 2001) (denying organizational standing because "ordinary expenditures as part of an organization's purpose do not constitute the necessary injury-in-fact required for standing").

The facts before the court here are analogous to those in *Keep Chicago Livable*. Plaintiffs here make no allegation that anything about the challenged statute or regulation makes it more difficult for Plaintiffs to accomplish their organizational purposes. The instant facts are not analogous to those in *Havens*, where the defendant's conduct itself (steering housing applicants to certain locations based on their race) made it more difficult for the plaintiffs to accomplish their goal of providing their clients with equal housing opportunity. The fact that Plaintiffs here disagree with the content of the challenged statute and regulation is not enough to confer standing. See *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Plaintiffs have identified no direct harm to their organizations as a result of the challenged firearm storage regulations for foster parents.

Plaintiffs direct the court's attention to *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011), as emblematic of a case where "The Seventh Circuit correctly held that SAF and ISRA had 'standing to demonstrate their irreparable harm'". In *Ezell*,

9

individuals, a business, and the SAF and ISRA challenged a City of Chicago ordinance banning firing ranges within the city. The Seventh Circuit held, after first holding that the individual plaintiffs had standing, that SAF and ISRA met the requirements for *associational* standing. The Seventh Circuit did not analyze whether SAF and ISRA had standing on their *own* behalves. Thus, *Ezell* is inapplicable insofar as Plaintiffs argue that it supports them having standing here, on their own behalves.

For the above reasons, another court has held these same allegations to be "plainly insufficient to give rise to" organizational standing. See *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 251 (S.D.N.Y. 2011), *aff'd sub nom. Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012). In *Kachalsky*, the court addressed the Second Amendment Foundation's allegations "that it promotes the exercise of the right to keep and bear arms and engages in education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms," and held that "such activities, standing alone, are plainly insufficient to give rise to standing." *Id.*[2] (internal marks omitted).

The same reasoning applies here. Plaintiffs have failed to allege that they have suffered a concrete injury, and therefore have failed to show they have standing in their own right.

---

[2] *Kachalsky* went on to address the merits of the case because other plaintiffs, aside from SAF, had established that they had standing, and "[w]here at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not." *Ezell*, 651 F.3d at 696 n.7 (citations omitted).

10

2. *Whether Plaintiffs Have Associational Standing*

To bring an action on behalf of its members, which is also known as associational standing, an organization must allege that "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 928 (internal quotation marks and alterations omitted).

When asked to evaluate a standing-based challenge to subject matter jurisdiction, "the court must first determine whether a factual or facial challenge has been raised." *Silha*, 807 F.3d at 173 (citing *Apex Dig.*, 572 F.3d at 443).[3]

> A factual challenge contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id.* at 444 (emphasis in original) (internal citations and quotation marks omitted). In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists. *Id.*
>
> In contrast, a facial challenge argues that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Id.* at 443 (emphasis in original). In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 443–44.

*Silha*, 807 F.3d at 173.

Here, Defendants Motion to Dismiss is properly understood as a facial, rather than factual, challenge to Plaintiffs' standing. Defendants clearly contend that

---

[3] The difference between a factual and facial challenge was irrelevant to this court's analysis at Part B.1 above because neither party attempted to put forth anything beyond the four corners of the Second Amended Complaint in briefing that issue.

11

Plaintiffs' Second Amended Complaint lacks sufficient *allegations* to establish standing. See *Silha*, 807 F.3d at 173. "In the context of facial challenges, … the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion. *Apex Dig.*, 572 F.3d at 444.

a. Facial Challenge to the Second Amended Complaint

The first element for associational standing "require[es] an organization suing as representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *Disability Rights Wisconsin, Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 801-02 (7th Cir. 2008).

The member may "remain unnamed by the organization," *id.*, but there must at least be "specific allegations establishing that at least one identified member had suffered or would suffer" concrete, particularized injury in fact from the defendant's actions. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (specific member planning to visit unspecified national forests insufficient to establish injury in fact related to environmental degradation of certain forest plots); *Quad Cities Waterkeeper v. Ballegeer*, 84 F. Supp. 3d 848, 860-62 (C.D. Ill. 2015) (standing established where specific members declared their intent to return to area alleged to be recreationally and aesthetically degraded by defendants' dumping); *Keep Chicago Liveable*, 913 F.3d at 623-24 (no standing where individual plaintiffs did not clearly or particularly state how challenged ordinance impeded their future plans); *Disability Rights Wisconsin, Inc.*, 522 F.3d at 804 (7th Cir. 2008) ("Because DRW's First Amended Complaint does not identify any

12

Walworth County disabled student with standing to bring suit based on the Board of Supervisors' conduct, DRW does not satisfy the first requirement"); *Kachalsky*, 817 F. Supp. 2d at 251 (Second Amendment Foundation fails to satisfy the first requirement because it "has neither identified particular members who have standing, nor specified how they would have standing to sue in their own right").

Defendants argue that Plaintiffs have failed to allege that any individual member of their organizations would have standing in her own right, and therefore Plaintiffs have failed to plausibly allege associational standing. Plaintiffs counter that because they alleged that there are persons among Plaintiffs' members that are licensed Illinois foster parents, Plaintiffs have alleged standing.

Plaintiffs' conclusory allegations that they "have members who have standing to bring this lawsuit in their own right," and general allegations that they have members "who are foster parents in Illinois [who] would possess and carry loaded and functional concealed handguns in public for self-defense, but refrain from doing so" because they fear reprisals due to the challenged provisions, are insufficient to withstand Defendants' facial challenge to the Second Amended Complaint. The Supreme Court has specifically rejected the blind acceptance of "the organizations' self-descriptions of their membership," even in instances where those assurances are *not* disputed, because "it is well established that the court has an independent obligation to assure that standing exists." *Summers*, 555 U.S. at 499; see also *id.* ("Without individual affidavits, how is the court to assure itself that the Sierra Club, for example, has thousands of

13

members who use and enjoy the Sequoia National Forest?") (internal marks omitted). Instead, "the Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm." *Id.* Plaintiffs' allegations in the Second Amended Complaint fail to plausibly plead associational standing because they have failed to allege any specific member who would have standing in their own right.

Insofar as Plaintiffs argue *Ezell* supports a finding of associational standing, there are not here, as there were in *Ezell*, individual plaintiffs whose standing is "not in serious doubt." *Ezell*, 651 F.3d at 696 (individual plaintiffs were firearms owners who wanted to maintain firearm proficiency via target practice at a firing range, and firing ranges were banned by the challenged provision). Here, there are no individual plaintiffs at all, and the Second Amended Complaint points to no individual member who would have standing either, as discussed above.

Defendants also argue that the Second Amended Complaint only alleges that Plaintiffs' members wish to possess and carry firearms *in public*, an action that is not prohibited by any of the challenged provisions. Plaintiffs' Response does not address this argument.

Plaintiffs' generalized allegations in the Second Amended Complaint center on Illinois foster parents who would "possess and carry loaded and functional handguns *in public* for self-defense," (emphasis added). The cited regulations and policies at issue, which regulate storage of firearms *in the home*, do not appear to contain any restriction

14

on "possessing and carrying loaded and functional handguns in public for self-defense," and the allegations make no mention of their membership's desire to possess a loaded and functional firearm *in the home*.

The challenged provisions in the Second Amended Complaint center on the following rule, one part of the Licensing Standards for Foster Family Homes:

> Any and all firearms and ammunition shall be locked up at all times and kept in places inaccessible to children. No firearms possessed in violation of a State or Federal law or a local government ordinance shall be present *in the home* at any time. Loaded guns shall not be kept *in a foster home* unless required by law enforcement officers and in accordance with their law enforcement agency's safety procedures.

Department Rule 402.8(g) (emphasis added). The disjunction between the generally alleged interests of unspecified members to concealed-carry loaded firearms in public, and the wording of the challenged provisions which relate to firearms in the home, further demonstrates the lack of concrete, particularized injury in fact *as a result of the challenged provisions*.

b. Analysis of Plaintiffs' Additional Evidence

Plaintiffs have asked the court to consider declarations and supplemental discovery responses, disclosed for the first time as attachments to their Response. Defendants object, pointing out correctly that they have raised only a facial challenge to the Second Amended Complaint. Defendants also argue the additional information is untimely under Rule 26(e). Plaintiffs provide no specific support for the court to consider this additional evidence.

15

Since Plaintiffs provided the supplemental material at issue, the court presumes Plaintiffs have no objection to the court considering it. Defendants have fully briefed the issue, although the court recognizes that Defendants have not waived their objection to the court considering the supplemental information. In the interest of judicial economy, and to assess the viability of allowing Plaintiffs further leave to amend, the court will consider whether the member declarations support a finding that Plaintiffs have associational standing.

Seventh Circuit precedent recognizes the necessity of considering material outside of the complaint when assessing standing in a *factual* challenge. See *Apex Dig.*, 572 F.3d at 444. A factual challenge would, in the ordinary case, be brought by a defendant. However, while the evidence at hand has been presented by Plaintiffs, the same principles support this court's decision to review the declarations and determine whether Plaintiffs have, in fact, associational standing to sue.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Apex Dig.*, 572 F.3d at 444 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

> In other words, the district court's ability to consider evidence beyond the pleadings derives from the importance of limiting federal jurisdiction. Because such "jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional allegation probably is false, the

court is duty-bound to demand proof of its truth." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

*Apex Dig.*, 572 F.3d at 444.

Upon a careful assessment of the member declarations, the court finds that the Second Amended Complaint's generalized allegations of the existence of members with standing are not borne out.

Despite Plaintiffs having ample time and being represented by competent counsel, despite the allegations in the first two complaints stating concrete individualized injury, and despite Plaintiffs *generally* alleging that they had members who had suffered injury, the member declarations now before the court omit any statement that establishes concrete, particularized injury in fact. No declarant states that they *would* possess loaded and functional firearms in opposition to the challenged provisions but *refrain* from doing so because they fear reprisals due to the challenged provisions. No declarant states they own a firearm at all or would own a firearm but for the challenged provisions. No declarant states any concern whatsoever with the challenged provisions. In short, the declarations do not state that they have been injured by the challenged provisions. Without particularized injury in fact, standing does not exist for any of Plaintiffs' described members. Thus, Plaintiffs' argument for associational standing fails at the first step. *Summers*, 555 U.S. at 497; *Keep Chicago Liveable*, 913 F.3d at 623-24. Plaintiffs are left seeking an advisory opinion "on abstract disputes about the law," which is impermissible. *Milwaukee Police Ass'n*, 708 F.3d at 928.

17

2:16-cv-02214-CSB-EIL # 40   Page 19 of 19
3:18-cv-03085-SEM-TSH # 56-13   Page 18 of 18

C. Conclusion

Defendants' Motion to Dismiss (#34) is granted because Plaintiffs have failed to allege they have standing either in their own right or based on an associational standing theory. Because the court has found Plaintiffs lack standing, analysis of the parties' other arguments is unnecessary.

Plaintiffs' have now had three opportunities to plead their claims, over more than two years. In ruling on the instant motion, the court has considered declarations by four of Plaintiffs' members, submitted well after Plaintiffs filed their Second Amended Complaint, in order to carefully assess the issue of standing. And, Plaintiffs make no request for an opportunity to further amend their pleadings. For all these reasons, Plaintiffs' Second Amended Complaint is dismissed with prejudice and this case is terminated.

IT IS THEREFORE ORDERED THAT:

1) Defendants' Motion to Dismiss (#34) is GRANTED with prejudice.

2) This case is terminated.

ENTERED this 1st day of April, 2019.

s/ Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE
