# EXHIBIT 20
## *Lafferty v. Amundson*
# Order on Summary Judgment

Case 2020CV000346  Document 77  Filed 09-30-2021  Page 1 of 15
3:18-cv-03085-SEM-TSH # 56-19  Page 2 of 15

FILED
09-30-2021
Clerk of Circuit Court
Washington County, WI
2020CV000346

BY THE COURT:

DATE SIGNED: September 30, 2021

<u>Electronically signed by James K. Muehlbauer</u>
Circuit Court Judge

| STATE OF WISCONSIN | CIRCUIT COURT | WASHINGTON COUNTY |
|---|---|---|

| | | |
|---|---|---|
| BRIAN LAFFERTY, et al<br>Plaintiff<br>vs.<br>EMILIE AMUNDSON, et al<br>Defendant | | DECISION AND ORDER ON<br>SUMMARY JUDGMENT<br><br>Case No. 20CV346 |

## I. INTRODUCTION

As previously noted, Plaintiffs Brian and Katie Lafferty have sued Defendants Emilie Amundson and Julie Driscoll in their representative capacity as the State of Wisconsin Secretary of the Department of Children and Families and the Director of the Washington County Human Services Department.

The Laffertys claim that the foster parent firearm restrictions contained in Wisconsin's Administrative Code and in a Washington County Human Services Department form violate their right to keep and bear arms, as guaranteed in the Second Amendment to the Constitution of the United States and Article 1, section 25 of the Wisconsin Constitution. The Lafferty Second Amended Complaint alleges that the Administrative Code and Washington County firearm restrictions for foster parents are "facially," i.e. *per se*, unconstitutional, meaning those restrictions cannot be enforced under any circumstances.

The case is now before the court on cross Motions for Summary Judgement. The court has reviewed the submissions of the parties. The court issues this written decision.

## II. CHALLENGED REGULATIONS

Wisconsin Administrative Code Chapter 56, titled "Foster Home Care for Children," requires foster parents to be licensed and comply with various procedures, rules, and regulations. Section DCF 56.08 deals with safety regulations.

The challenged State firearm safety regulation is contained in DCF 56.08(5), which provides that, except for sworn law enforcement officers who are required to maintain a loaded weapon at all times,

> FIREARMS AND OTHER WEAPONS. (a) … no loaded firearm may be kept in a foster home.
> (b) No unloaded firearm … may be kept in a foster home unless stored in an area not readily accessible to foster children. Ammunition materials and firearms shall be stored in separate locked areas that are not readily accessible to foster children."

The challenged Washington County Human Services Department form, which foster parents must complete, sign, and agree to as part of the license application and renewal process, provides that,

> "If a foster parent holds a Conceal and Carry Permit, the foster parent is not permitted to carry a weapon on them while in the presence of foster children, with the exception of organized hunting outings. The rules defined in DCF 56.08(5) remain in effect and apply to foster parents with Conceal and Carry Permits. Foster parents must keep all weapons inaccessible to foster children."

## III. UNDISPUTED FACTS

It is undisputed that the Laffertys are licensed foster parents who possess approximately 20 firearms, plus ammunition in their home. It is undisputed that Brian Lafferty has a Carry Conceal Weapon permit. It is undisputed that the Laffertys are currently complying with, but nevertheless challenging, the State and County firearm and ammunition restrictions.

2

It is also undisputed that the failure of the Laffertys to store their firearms and ammunition in locked containers would pose a safety risk to foster children. Brian Lafferty acknowledged as much in his deposition. See Brian Lafferty deposition of April 14, 2021, page 43, lines 20–25.

## IV. SUMMARY JUDGMENT STANDARDS

The standards for summary judgment are well known**.** Under §802.08(2), Wis. Stats., summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

> "When a motion for summary judgment is made and supported … an adverse party may not rest upon the mere allegations or denial of the pleadings, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party." Section 802.08(3), Wis. Stats.

Under the required summary judgment methodology, the court first examines the pleadings and decides whether a claim for relief has been stated. If so, the court then examines the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to determine whether there are issues of material fact that preclude summary judgment. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be granted. *In re Cherokee Park Plat*, 113 Wis. 2d 112, 115-16 (Ct. App. 1983).

Affidavits "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." Section 802.08(3), Wis. Stats. Affidavits containing mere conclusions and not facts are insufficient. *Kroske v. Anaconda American Brass Company*, 70 Wis. 2d 632 (1975). Affidavits made on the basis of the affiant's information and belief or

3

containing mere assertions of ultimate facts are ineffectual to establish evidentiary facts. *Webb v. Ocularra Holding, Inc.*, 232 Wis. 2d 495 (Ct. App. 2000).

Summary Judgment is granted only where there is no room for controversy. *Kraemer Brothers v. United States Fire Insurance Company*, 89 Wis. 2d 555, 566 (1979). All material facts must be undisputed and not give rise to competing reasonable inferences supporting conflicting results. *Cameron v. City of Milwaukee*, 102 Wis. 2d 448, 459 (1981).

Evidence offered in opposition to a motion for summary judgment may be less than is sufficient to prove a case, but it must be substantial and raise a question of fact. *Artmar, Inc. v. United Fire & Casualty Company*, 34 Wis. 2d 181, 188 (1967). It is not necessary that an opposing party put in all of its case, but sufficient facts must be presented to enable the court to determine that the opposing party is entitled to a trial. *Dottai v. Altenbach*, 19 Wis.2d 373, 378-79 (1963).

For Declaratory Judgment actions like this one, a declaratory judgment shall be rendered if there is a "justiciable controversy" that is ripe for judicial determination. *Loy v. Bunderson*, 107 Wis. 2d 400 (1982). For purposes of a declaratory judgment, the case is "ripe" for judicial determination when facts are sufficiently developed to admit conclusive adjudication. *State ex rel Chiarkas v. Skow*, 160 Wis. 2d 123 (1991). While all the facts need not be resolved as a prerequisite to a declaratory judgment, the facts must not be contingent and uncertain. *Miller Brands-Milwaukee, Inc. v. Case*, 162 Wis. 2d 684 (1991).

## V. ARGUMENTS

In essence, the Laffertys argue that their individual right to keep and bear arms, as guaranteed in the Second Amendment to the Constitution of the United States and Article 1,

4

section 25 of the Wisconsin Constitution, prohibits the State of Wisconsin and Washington County from imposing on them the challenged firearm and ammunition safety rules.

The State and County, through Amundson and Driscoll, argue that (1) by applying to be licensed foster parents, the Laffertys voluntarily waived their constitutional right to keep and carry unsecured loaded firearms and (2) the firearm regulations in question are reasonable restrictions consistent with Second Amendment rights of foster parents.

## VI. ANALYSIS

### A. Basic Firearm and Foster Care Principles

This is hardly the first case involving a conflict between a person's individual constitutional rights and the right of the government to impose reasonable restrictions on those constitutional rights. There are many reported cases analyzing constitutional right conflicts in non-firearm circumstances.

For firearms, there are a number of well-known and generally accepted government restrictions on the right to keep and bear arms.

As stated by Justice Scalia in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and reiterated by Justice Alito in *McDonald v. City of Chicago*, 561 U.S. 742 (2010),

> "We made it clear in *Heller* that our holding did not cast doubt on such long standing regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms'"
> *McDonald* at page 786.

*Heller* and *McDonald* have their limitations. *Heller* dealt with a District of Columbia law that banned rather than limited possession of handguns, made it a crime to carry an unregistered handgun, and prohibited handgun registration. As the Court noted,

5

> "The **handgun ban amounts to a prohibition of an entire class of 'arms'** that is overwhelmingly chosen by American society for that lawful purpose. **The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute.** Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to 'keep' and use for protection of one's home and family, would fail constitutional muster."
> *Heller* at pages 628-29. (Emphasis added.)

> "We are aware of the problems with handgun violence … The Constitution leaves the District of Columbia a variety of tools for combating the problem, including some measures regulating handguns …. But **the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the <u>*absolute prohibition of handguns*</u> held and used for self-defense in the home.**"
> *Heller* at page 636. (Emphasis added.)

*McDonald* dealt with absolute bans on firearms in the City of Chicago and Village of Oak Park. Those bans were similar to the District of Columbia ban.

In short, *Heller* and *McDonald* establish that an absolute ban on firearms in the home is unconstitutional. While instructive, *Heller* and *McDonald* do not deal with the situation presented in this case.

Unfortunately, there is a dearth of appellate case law dealing with the **regulation, rather than absolute ban, of firearms of foster parents**. There is at least one relevant case, namely, *Johnson v. Lyon*, 406 F. Supp. 3d 651 (N.D. Michigan 2018). While not definitive, *Johnson* indicates that in the Sixth Circuit, and utilizing the Federal Court two-step framework for evaluating a foster parent's Second Amendment claim under the "intermediate scrutiny" standard, "the burden of justification is demanding and rests entirely on the State." *Johnson* at page 669.

Despite the lack of useful precedent, certain underlying basic legal principals are obvious.

6

First, it is obvious that individuals such as the Laffertys, have a constitutional right to possess and carry firearms, but their right is not unlimited. As noted above, they cannot possess and carry firearms in schools, courthouses, airports, and certain other buildings.

Second, it is equally obvious that foster children have a Fourteenth Amendment Due Process constitutional right to be placed in safe and secure foster homes. It is well-established that both the State of Wisconsin and County Human Services Departments owe a constitutional duty to foster children under the Due Process Clause of the Fourteenth Amendment to place those children in a safe and secure foster home environment. See *Kara B. v. Dane County*, 205 Wis.2d 140 (1996), *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and *K.H. v. Morgan*, 914 F.2d 846 (7th Cir. 1990).

Given the Second Amendment and foster child safety rights involved, this case presents a difficult question of whether the specific firearm regulations at issue, which regulations are imposed only on persons who voluntarily become foster parents, are enforceable based on waiver or as constitutionally permissible reasonable regulations needed to prevent firearm accidents involving foster children.

### B. Waiver

The parties agree that constitutional rights can be waived in some circumstances, but not others. They disagree as to whether Second Amendment rights can be waived in a foster child situation.

#### 1. State and County Waiver Arguments and Cases

The State and County argue that the Laffertys' Second Amendment rights can be waived and have been waived by contract because the imposed firearm restrictions are reasonable and "rationally related" to the benefit of being granted a foster child care license.

7

The State and County correctly state that the contractual waiver in dispute is voluntary and temporary. The Laffertys can, of course, unilaterally negate the waiver by choosing not to be foster parents.

The State and County rely on *Bingham v. Holder*, 637 F.3d 1040 (9th Cir. 2011) and *Burgess v. Lowery*, 201 F.3d 942 (7th Cir. 2000).

*Bingham* deals with a Department of Homeland Security summary removal of a United Kingdom citizen, Bingham, under the Visa Waiver Program, where Bingham overstayed the allowable 90 days. In rejecting Bingham's Due Process claim, the Ninth Circuit stated,

> "… Bingham's right to enter the United States was not conditioned on a waiver of his constitutional rights. He was free to decline the waiver of his rights to contest removal and seek entry by way of a tourist visa. \*\*\* Also, the government may condition the grant of a discretionary benefit on a waiver of rights '**if the condition is rationally related to the benefit conferred**."
> *Bingham* at page 1046. (Emphasis added.)

*Burgess* deals with a federal section 1983 action based on strip searches of state prison visitors. Visitors were required to sign a consent form authorizing strip searches regardless of whether reasonable suspicion existed. In denying the motion of prison officials to dismiss the 1983 action based on the signed consent form, the court stated,

> "… **a general conditioning** of prison visitation on subjection to a strip search **is manifestly unreasonable**. \*\*\*
> \*\*\* **In these circumstances, the costs of the defendants' practice seems clearly to exceed the benefits**, and by a wide margin.
> *Burgess* at page 948. (Emphasis added.)

The State and County also rely on *Hall v. Sweet,* 666 F. Appx. 469 (2016) (Unpublished). *Hall* is a group child care home case in which the group home owners consented to inspection of the group home facility as a condition of their license renewal application. The utilized license application form allowed the Michigan Department of Human Services to "make necessary and

8

reasonable investigation of activities and standards of care, and make an onsite inspection." In dealing with the application form consent question, the court stated,

> "Conditioning a group child care license on consent to search that home is distinguishable from unreasonably conditioning a license on consent to search areas unrelated to that license and with no similarly compelling child care interest at stake. *** In sum, **the condition here, that the group child care home license would issue only if the state could inspect the home for regulatory compliance, was a reasonable one. The consent to search was therefore effective.**
>
> Accordingly, the court finds defendants' conduct was not a violation of the Fourth Amendment because Ms. Hall had consented to the searches and plaintiffs did not withdraw or otherwise limit that consent."
> *Hall* at page 477. (Emphasis added.)

In making their contract waiver argument, the State and County acknowledge the need to consider the nature of the constitutional right being waived. They cite the case of *Cesar v. Achim*, 542 F. Supp. 22d 897 (E.D. Wis. 2008), which involved deportation proceedings for a Haitian detainee, Dulce Cesar. In dealing with the byzantine area of immigration law, the court noted that it needed to take into account not only the government interest and justification, but also the nature of the sacrificed constitutional right. The constitutional right in question was Cesar's due process right to not be detained indefinitely. In ruling against Cesar, the court indicated that if Cesar were to actually be detained indefinitely – such that removal from the United States would "not be **reasonably foreseeable**," such detention would be a violation of due process.

The claimed need and justification for the firearm restrictions is that "unsecured firearms pose a risk of injury to children – a risk that is only heightened for foster children." While risk of injury justification is obvious to this court and has been acknowledged by Brian Lafferty in his deposition, the State and County have submitted expert reports in support of their position. The validity of the experts' opinions is challenged by the Laffertys.

9

**2. Lafferty Waiver Arguments and Cases**

The Laffertys claim that §66.0409, Wis. Stats., preempts local regulation of firearms. The Lafferty argument is undeveloped. Presumably the Laffertys are alleging that the Washington County Human Services Department form violates §66.0409, Wis. Stats. That section prohibits local government agencies from enacting or enforcing an **ordinance or** adopting a **resolution** regulating firearms, "unless the **ordinance or resolution** is the same as or similar to, and no more stringent than, a state statute." (Emphasis added.) However, the challenged County form is neither an ordinance nor a statute.

The Laffertys note that §175.60(2), Wis. Stats., permits qualified licensed Wisconsin citizens to carry a concealed weapon, consistent with the United States and Wisconsin Constitutions. This is, of course, correct.

On the fundamental question of waiver, the Laffertys argue that the State and County cannot condition foster care licensing on a waiver of their United States and Wisconsin constitutional right to bear arms. The Laffertys argue that under the "unconstitutional condition" doctrine, their Second Amendment firearm rights cannot by waived.

In claiming their voluntary waiver is unconstitutional, the Laffertys rely on a series of Wisconsin and Federal appellate decisions, including *Lawson v. Housing Authority of City of Milwaukee*, 270 Wis.2d 269 (1955); *Frost & Frost Trucking Company v. Railroad Commission*, 271 U.S. 583 (1926); *American Communications Association C.I.O v. Douds*, 339 U.S. 382 (1950); *Madison Teachers, Inc. v. Walker*, 358 Wis.2d 1 (2014), *Milewski v. Town of Dover Board of Review*, 377 Wis.2d 38 (2017).

*Frost* dealt with a California law requiring private carriers to obtain a Railroad Commission certificate of convenience and necessity before being able to operate on public

10

highways, thereby converting Frost Trucking from a private carrier into a public carrier. The case was decided based on the trucking company's Due Process Constitutional right, not to be "converted against its will in to a common carrier by mere legislative command." *Frost* at page 593. In finding the California law unconstitutional, the U.S. Supreme Court indicated,

> "**If the state may compel the surrender of one constitutional right as a condition of its favor, it may in a like manner, compel a surrender of all**. It is inconceivable that guarantees imbedded in the Constitution of the United States may thus be manipulated out of existence."
> *Frost* at page 594. (Emphasis added.)

Despite the above seemingly absolute language in *Frost*, it is important to recognize that *Frost* does not stand for the proposition that any and all limitations on constitutional rights are improper and therefore unconstitutional. Rather, as stated in *Frost*, the State "is **without power to impose an <u>unconstitutional</u> requirement**." Frost at page 598. (Emphasis added.) What is an unconstitutional condition depends upon the facts and circumstances.

*American Communications* dealt with a National Labor Relations Act prohibiting communists from holding leadership positions in labor unions by requiring union officers to sign an affidavit indicating they do not belong to the communist party and do not believe in overthrow of the government by force. In upholding the constitutionality of the affidavit condition, in his concurrence Justice Frankfurter cautioned that,

> "Congress may withhold all sorts of facilities for a better life, but if it affords them **it cannot make them available in an obviously arbitrary way or exact surrender of freedoms unrelated to the purpose of the facilities**."
> *American Communications* at page 693. (Emphasis added.)

*Lawson* is a Free Speech case. Citing the *American Communications* U.S. Supreme Court case, *Lawson* found unconstitutional a City of Milwaukee condition that public housing tenants certify their non-membership in organizations designated as subversive by the Attorney General. In reaching its decision, the Wisconsin Supreme Court indicated,

11

> "This court deems the **possible harm which might result in suppressing the freedoms of the First amendment outweigh any threatened evil** posed by the occupation by members of subversive organizations of units in federally aided housing projects."
> Lawson at pages 287-88. (Emphasis added.)

*Madison Teachers, Inc.*, involved a lawsuit by the Madison Teachers Association, which claimed the Free Speech, Equal Protection, Contract, and First Amendment rights of public employees to collectively bargain were violated by enactment of Act 10, which prohibits collective bargaining on issues other than base wages. While the *Madison Teachers, Inc.* case contains a discussion of the constitutional rights claimed to have been violated, the case was not decided based on constitutional rights. Instead, the court held that collective bargaining was not a constitutional right. See *Madison Teachers, Inc.* at pages 37–38.

*Milewski* cites and agrees with the caution in *Frost* against manipulating constitutional rights out of existence. *Milewski* was decided on an "as applied" rather than facially unconstitutional basis. *Milewski* at pages 91–92.

### 3. Court Waiver Analysis and Conclusions

As the appellate cases cited by both parties indicate, the validity of the waiver of a constitutional right depends the particular circumstances of the waiver. Those circumstances include (1) the nature of the constitutional right waived, (2) whether the waiver is rationally related to the benefit received, rather than arbitrary and unrelated, (3) the cost versus the benefit, in other words, the harm to the person waiving the right as compared to the threatened harm avoided by the waiver, and (4) the breath of the restriction imposed by the waiver.

Here, the **nature of the constitutional right waived** is certainly not the complete bar to possession or ownership of firearms and ammunition found in *Heller* and *McDonald*. Here, the waiver is of the right to possess *loaded* firearms in the home, and of the right to conceal carry

12

firearms *while in the presence of foster children*. The fact that the waiver requirements for foster parents are limited rather than a complete ban is significant because, as Justice Scalia explained in *Heller*, the Court's analysis should not be read to "suggest the invalidity of laws regulating the storage of firearms to prevent accidents." *Heller* at page 632.

Here, **the waiver is rationally related to the benefit received**. That is, the waiver is related and limited to foster care licensing and the State and County's legitimate interest in meeting their legal obligations under the Due Process Clause of the Fourteenth Amendment, and under common law negligence law, to place foster children in safe and secure homes.

Here, **the cost of the firearm regulations is the specific limited restriction** against having *loaded* firearms in the home and the specific limited conceal carry restriction against conceal carrying of firearms *while in the presence of the foster children*. This cost is not a ban on possessing firearms in the home; it is not a ban on conceal carry when foster children are not present. **The benefits are the granting of foster care home licensing and the safety of foster children.** These obvious benefits exist irrespective of the parties' disagreement over data relating to the heightened safety risk to foster children. Regardless of whether the risk is truly heightened or not, as a matter of common sense, and as acknowledged by Brian Lafferty in his deposition, the failure to store firearms poses a safety risk to foster children.

Here the **breath of the firearm and ammunition restrictions imposed by the contractual waiver is narrow and relatively minor**. As previously stated, the restrictions are neither a general ban on firearms in the home nor a general ban on conceal carry. Unlike *Heller, McDonald, and Burgess*, the restriction is voluntary and limited to *loaded* firearms in a foster home and conceal carry *in the presence of the foster children*. Significantly, the Laffertys have

13

the ability at any time to unilaterally cancel the firearm and ammunition restrictions by choosing not to be foster parents.

This court finds that the waiver requirements in question are voluntary, rationally related to the safety of foster children, narrow in scope, and a minimal burden for foster parents. The court finds that the waiver requirements are a **limitation, but not a ban, on possession of firearms and ammunition in the home and carry conceal rights.** Accordingly, under the particular undisputed facts and circumstances present, the court finds that the contractual waiver is constitutional and enforceable.

With the court having determined that Laffertys' waiver is constitutional and enforceable, the court does not reach the separate question of whether absent a valid waiver, the firearm and ammunition restrictions would be enforceable as reasonable restrictions consistent with the Second Amendment rights of foster parents.

## VII. CONCLUSION AND ORDER

For the above-stated reasons, IT IS HEREBY ORDERED that the Motions for Summary Judgment of Defendants Emile Amundson and Julie Driscoll in their representative capacity as the State Secretary of the Department of Children and Families and County Director of the Washington County Human Services Department are granted. The Laffertys' Motion for Summary Judgment is denied.

**THIS DOCUMENT IS A FINAL JUDGMENT OR FINAL ORDER UNDER §808.03 AND §808.04, WIS. STATS. NO SUBSEQUENT DOCUMENT IS CONTEMPLATED.**