*Marty Hayes, J.D.*
*PO Box 400*
*Onalaska, WA  98570*
*360-878-1975*

January 15, 2021

Mr. David G. Sigale. Esq.
Law Firm of David G. Sigale, P.C.
430 West Roosevelt Road
Wheaton, IL 60187

Subject:  Expert Report, Miller v. Smith   No. 3:18 -cv-3085 (Central District Illinois)

Dear Attorney Sigale:

I am writing to provide my expert report in the above referenced matter, as follows:

I have been asked to opine as to whether IDCFS Rule 402.8(o), (which applies to foster parents) would create an unreasonable and unnecessarily restrictive burden to the lawful use of firearms in self-defense. This is stated below for ease of reference:

> IDCFS Rule 402.8(o),  *Any and all firearms and ammunition shall be stored and locked up separately at all times and kept in places inaccessible to children. No firearms possessed in violation of a State or federal law or a local government ordinance shall be present in the home at any time. Loaded guns shall not be kept in a foster home unless required by law enforcement officers and in accordance with their law enforcement agency's safety procedures.*

I have also been asked to opine as to whether 225 ILCS 10/7, Rule 406.8 (17) and (18) (which applies to day care centers) creates an unreasonable and unnecessarily restrictive burden to the lawful use of firearms in self-defense. This is stated below for ease of reference.

> 225 ILCS 10/7, Rule 406.8 (*17) Handguns are prohibited on the premises of the day care home except in the possession of peace officers or other adults who must possess a handgun as a condition of employment and who reside in the day care home. The licensee shall post a "no firearms" sign, as described in Section 65(d) of the https://Www.ilga.gOv/commission/jcar/admincode/089/089004060000080R.html 3/10 9/13/2020 Section 406 Firearm Concealed Carry Act [430 ILCS 66/65(d)], in a visible location where parents pick up children.*

*18) Any firearm, other than a handgun in the possession of a peace officer or other person as provided in subsection (a)(17), shall be kept in a disassembled state, without ammunition, in locked storage in a closet, cabinet, or other locked storage facility inaccessible to children.*

> *A) Ammunition for such firearms shall be kept in locked storage separate from that of the disassembled firearms, inaccessible to children.*
>
> *B) The operator of the home shall notify the parents or guardian of any child accepted for care that firearms and ammunition are stored on the premises. The operator shall also notify the parents or guardian that such firearms and ammunition are locked in storage inaccessible to children. (Section 7 of the Child Care Act of 1969 [225 ILCS 10/7]) The notification need not disclose the location where the firearms and ammunition are stored.*

**Preparation for Rendering Opinions**

In preparation for this report, I have done the following:

Reviewed documents consisting of: Complaint and Amended complaint, Depositions of Darin Miller, Jennifer Miller, Richard Pearson, David Buysse, Meaghan Jorgenson, Julliane Versnel along with accompanying exhibits referred to in deposition. Also reviewed Aug. 18 letter from George Sheldon ref. Rules 406 and 408: Illinois Register, Vol 40 Issue 33.

**Qualifications for Rendering Opinion**

From 1988 to the end of 2020, I taught firearms and self-defense training as a full-time profession, having taught and counseled an estimated 20,000 + armed citizens regarding the safe use of firearms in self-defense, including considerations for home storage and use of firearms in the home for self-defense. This was through my own school, The Firearms Academy of Seattle, Inc.  I retired from teaching firearms at the end of 2020, and have a sale pending on the range and business.  I have also presented and taught for The American Society of Law Enforcement Trainers, the Washington State Law Enforcement Firearms Instructors Association and the International Law Enforcement Firearms Instructors Association.   (See attached Curriculum Vitae for additional).

 I have worked both full-time and also part-time as a police officer in various positions from 1978 through 2010, including working as a patrol officer for approximately 10 years where I responded to and investigated crimes, including burglary and assault, along with being a police firearms instructor the remaining time.

I have also worked as an expert witness, having been recognized by multiple courts and testified within those courts as an expert in dynamics of violent encounters, shooting incident reconstruction, use of force in self-defense, homicide investigation, law enforcement firearms training and firearms in general.

As part of my duties as Director of The Firearms Academy of Seattle, Inc. I kept abreast of current technologies regarding safe storage of firearms, including quick access firearms safes and vaults, having attended industry gatherings and conventions where display of gun safes and quick access vaults were a notable and important part of the convention.  I or the school own four full sized gun safes, with both push button electronic and manual dials, along with several lock boxes commonly sold for home or vehicle use in securing firearms.

I also am the founder and president of The Armed Citizens' Legal Defense Network, Inc. (ACLDN) a 19,000+ membership organization dedicated to providing legal assistance to qualified individuals who have used force in self-defense.  One of my many duties with ACLDN is to stay abreast of matters concerning the use of force in self-defense, along with gun rights and legal issues, both on the national level (U.S. Appellate Courts) and the local level, (state courts).

I hold a master rating in 3 firearms shooting disciplines, including the International Defensive Pistol Association where it is common to require shooters to load firearms under stress and time constraints, along with having shooters participate in simulated home invasion scenarios. I am intimately familiar with the time it takes for people to manipulate firearms, and move through buildings while shooting simulated targets.  I have participated in over 100 (estimate) such shooting scenarios personally.

My attached curriculum vitae will detail thousands of hours of class study in mechanics of shooting, along with tactical issues regarding use of deadly force in self-defense and the legalities of using force in self-defense.

For the last 12 years, I have monthly written/published on-line articles involving the legalities of self-defense, along with issues involving the Armed Citizens' Legal Defense Network, Inc.  Those articles can be viewed at https://armedcitizensnetwork.org/our-journal .   Additionally, I have had several articles published under my byline for Gun Digest Magazine, which can be viewed at https://gundigest.com/author/marty-hayes-jd . I also continuously publish "What Every Gun Owner Needs to Know About Self-defense Law" for the Armed Citizens Legal Defense Network, Inc.  I am also a Life Member of the National Rifle Association and the Second Amendment Foundation,,

My compensation for my work in this case is $250 per hour.

**Analysis and discussion: Foster parents**

IDCFS Rule 402.8(o), (which applies to foster parents) would create an unreasonable and unnecessarily restrictive burden to the lawful use of firearms in self-defense. This is stated below for ease of reference:

> *Any and all firearms and ammunition shall be stored and locked up separately at all times and kept in places inaccessible to children. No firearms possessed in violation of a State or federal law or a local government ordinance shall be present in the home at any time. Loaded guns shall not be kept in a foster home unless required by law enforcement officers and in accordance with their law enforcement agency's safety procedures.*

As previously stated, IDCFS Rule 402.8(o) requires that foster parents must keep all guns in the home locked up and inaccessible to children, ammunition must also be kept locked up and inaccessible to children separate from the firearms, and only law enforcement officers may keep a loaded gun in the home.

This requirement negates the ability of a foster parent to reasonably protect his family, including the foster child or children.

My life-long study of criminal behavior, first as a police officer then in my later years as a self-defense firearms instructor leads to the undeniable truth that criminal attacks can happen in a matter of seconds (the home invasion robbery or stealth burglary). Unless the homeowner has immediate access to a firearm, the likelihood of them being victimized, (robbed, raped and/or murdered) during a burglary or home invasion is extremely high. Requiring the foster parent to store the firearm unloaded and locked separately from the ammunition severely hampers the ability of the foster parent to protect his family.

Burglary is a serious criminal issue here in the United States. According to the Federal Bureau of Investigation, there were an estimated 1,117,696 burglaries committed in the United States in 2019. In Illinois alone, that figure was 34,433 burglaries. Yet through these rules and regulations, Illinois renders the foster parent likely incapable of even a remote chance of defending themselves and their families against this form of common criminal attack.

If one was to follow the IDCFS requirements, and possessed the very best and quickest lock boxes, gun safes and ammunition safes, it would still take an estimated minimum 18 seconds from start to the use of the firearm for defense. Broken down, it would likely a take minimum 5 seconds to access the firearm using a biometric safe, (the quickest) then move to the ammunition safe (at least 3 seconds) unlock the ammunition storage safe and grab the ammunition, (5 seconds if another biometric safe was used for the ammunition) then load the firearm and employ it, (another 5 seconds). And this would be for an extremely skilled

individual using the latest gun safe technology.   The average person would likely take at least twice as much time.

Contrast the above with the home burglary scenario.  If the burglar had gained access to the home via stealth, (homeowner not aware of burglar until he/she was confronted) absent a gun within arms' reach, the homeowner would not have a reasonably likely chance of survival if the burglar intended to kill the homeowner.

In a home invasion burglary, the level of violence is much higher.  Typically the home invader(s) enter through an unlocked door or smash in an entry door, then move quickly through the home, killing the occupants outright or gathering them up in a central location for either being tied up and raped or robbed, or tied up and killed.  ONLY a person who is carrying the gun on his body or has immediate access to one within an arms' reach would have a reasonable chance to protect the family, (including the very same foster children this law is meant to protect).  The way the rules are written and enforced, there is no reasonable way to protect the family against a home invader(s) whether robbery, an angry former spouse or lover, or an angry natural parent (of the foster child) who has learned of the whereabouts where his or her child is living, and is so unhappy about the situation, they resort to violence.

Consequently, it is my opinion that IDCFS Rule 402.8(o) results in the exact opposite of its intended purpose, that being to make the foster children less safe, as opposed to more safe.

**Analysis and discussion: Daycare facilities**

225 ILCS 10/7, Rule 406.8 (17) and (18) (which pertains to day care centers) disallows any immediate access to a loaded gun during business hours, except to police officers or other individuals required to have a firearm for their employment.  The result of this regulation means the daycare provider is rendered helpless against an individual who is bent on attacking any child in the daycare facility.

A simple Internet search of "shooting in day care" will result in a plethora of returns identifying cases where an individual brought a gun to the facility and started shooting.  Below are 3 listed for reference;

**Woman shot in parking lot of DeKalb County daycare**
https://www.fox5atlanta.com/news/police-woman-shot-in-parking-lot-of-dekalb-county-daycare

**Two Die Outside Daycare Center**
https://abcnews.go.com/US/story?id=94295&page=1

**No bond for suspect arrested in fatal shooting outside of Taylors Daycare Center**
https://www.foxcarolina.com/news/no-bond-for-suspect-arrested-in-fatal-shooting-outside-of-taylors-daycare-center/article_d8894152-e390-11e9-9417-0b9868c0e790.html

To effectively stop an active shooter, a trained individual must be able to access a firearm and employ countervailing deadly force within a few seconds.  This necessity is no different for police officers who have received sufficient training in responding to and stopping active shooters.

I have personally trained with Col. Ed Monk, a retired Army Colonel who has spent the last 13 years studying and analyzing active shooter incidents, and who now conducts user and instructor training regarding how to respond to an active shooter, through his company "Last Resort Training, (located at 4220 Gravel Pit Road, White Hall, AR, 71602, 870-273-1113.  Col. Monk, (whom I talked to today in preparation for this report) explains that in an average active shooter scenario, a person dies every 10 seconds, and for the first several victims, that time frame is condensed to 4-5 seconds.

In my opinion, if a person were to desire to have a gun accessible for defense of self or others in a day care setting, that firearm should be a handgun, carried in a secure holster and concealed on their person, and, when the gun is taken off, that it be allowed to remain loaded and be stored in a secure, biometric gun safe, which would allow access immediately (within 5 seconds or so) if necessary.  This recommendation is due to the effectiveness of the handgun in a self-defense situation, (for example, all police officers carry handguns), and was even discussed in the Heller case by Justice Scalia, (see below).

> *"It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police. Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid."*

**Summary**

It is my opinion based upon the reasons outlined above and stated to a reasonable degree of certainty in the area of firearms use and firearms safety, that the IDCFS's rules and regulations regarding foster parents and the keeping of firearms at home is overly burdensome, too

severely restricts the right of a foster parent to keep a loaded handgun at home for self-defense and the ability to use that firearms in self-defense.

In addition, regarding day care centers, the Illinois law regarding no firearms allowed at a license daycare during operating hours places both the operators and the clients of the daycare in a severely disadvantaged position in the event violence comes to that daycare during operating hours.

Even being allowed to possess a loaded firearm that is kept in a locked safe would both protect children while allowing the foster parent or day care operator a reasonable opportunity for self-defense and defense of others, assuming that the safe would be of good quality that would prevent unauthorized access but allow for a reasonably quick access.

I also reserve the right to expand upon or alter the opinions expressed herein if additional information becomes available to me.

Respectfully Submitted:

*/S/ Marty Hayes*

Marty Hayes, J.D.

Attachment:  Marty Hayes Curriculum Vitae