E-FILED
Friday, 14 January, 2022  03:12:34 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

JENNIFER J. MILLER, *et al*.,

        Plaintiffs,

v.

MARC D. SMITH, *et al*.,

        Defendants.

Case No. 18 cv 3085

Hon. Sue E. Myerscough
Presiding Judge

Hon. Tom Schanzle-Haskins
Magistrate Judge

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

Defendants are entitled to summary judgment on Plaintiffs' meritless Second Amendment challenge to DCFS Rules requiring separate storage of guns and ammunition in licensed daycare and foster care homes. Plaintiffs' Response demonstrates there are no genuine factual disputes about the Rules or how they apply to Plaintiffs. The issue before the Court is a question of law: whether the challenged Rules violate Plaintiffs' Second Amendment rights. They do not.

As Defendants' motion establishes, Plaintiffs waived any Second Amendment right they may have to keep loaded or unsecured guns in their home when they voluntarily became licensed day care home and foster care providers. Plaintiffs' Response does not point to any case law that forbids the State from insisting that children in the State's care be placed in homes where loaded or unsecured guns are not present.

Even if Plaintiffs had not waived their Second Amendment rights, Plaintiffs' Response fails to show the DCFS Rules infringe them. The Rules are consistent with a long and undisputed historical tradition of safe-storage regulations. The Rules are also presumptively lawful regulations under *District of Columbia v. Heller*, 554 U.S. 570 (2008). If the Court applies Second Amendment

scrutiny, then the undisputed material facts show that it must likewise uphold the Rules based on the overwhelmingly strong public interest justification in ensuring that children—ranging from toddlers to teenagers—are safe from firearms in a daycare or foster care home.

## I.   There is no genuine dispute about any material fact.

Summary judgment is appropriate because the material facts are not genuinely disputed. Fed. R. Civ. P. 56(a); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021). Plaintiffs try to *manufacture* a dispute by offering conclusory factual statements and denials that are unsupported by the record, and by introducing at the eleventh hour new and inadmissible material outside of the record. These tactics are insufficient to create a genuine issue of material fact.

### A.   Plaintiffs admit the vast majority of the material facts, and their unsupported denials are insufficient to create a genuine dispute.

Once a party has made a properly supported motion for summary judgment, the burden is on the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." *Harney v. Speedway Superamerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). This obligation requires that the non-movant identify the evidence that creates the issue. *Id.* The nonmoving party must do more than raise a metaphysical doubt as to material facts. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). And a mere scintilla of evidence is insufficient. *Id.* To defeat summary judgment, plaintiff must offer sufficient evidence that a trier of fact would be justified in entering judgment in plaintiff's favor. *Id.*

Moreover, the Local Rules require that when a party disputes a material fact offered in support of summary judgment, that dispute "must be supported by evidentiary documentation referenced by specific page." Local Rule 7.1(D)(2)(b)(2). "Factual allegations not supported by the record are nullities," and "[n]aked denials are insufficient to controvert a movant's properly supported … statement of undisputed material fact." *Kibler v. United States*, 46 F. Supp. 3d 844,

847 (C.D. Ill. 2014) (enforcing LR 7.1(D)(2)(b)). Conclusory allegations and blanket denials without reference to supporting materials are not evidence of a factual dispute and cannot defeat a motion for summary judgment. *Id.* at 847, 849. When a party does not contradict the summary judgment movant's asserted facts in the manner specified by the Local Rule, those facts must be deemed admitted. *Id.* at 848–49.

All of Defendants' material facts should be deemed admitted for the purpose of this summary judgment motion. Plaintiffs largely admit the material facts in their response. *See* ¶¶ 1–5, 7–12, 14–15, 17, 19, 21–29, 31–33, 35–38, 41, 43–59, 64–66, 68–85, 87–92, 94–105, 147–48. Plaintiffs' admissions qualified with legal arguments are still factual admissions. *See* ¶¶ 13, 18, 30, 39–40, 42, 60–63, 67, 109. Plaintiffs' denials (or admissions with qualified denials) that are unsupported by specific facts and citations, *see* ¶¶ 6, 106, 108, 111, 114–24, 129–32, 134, 137–41, 143–45, also must be deemed admitted. *See* Local Rule 7.1(D)(2)(b)(2); *Kibler*, 46 F. Supp. 3d at 847, 849.

The few remaining responses from Plaintiffs that dispute facts with specific citations to the record are at odds with the record itself. *See* ¶ 16 (misstating testimony, as demonstrated by the cited excerpt); ¶¶ 20, 34 (citing evidence irrelevant to the stated fact because the cited materials do not address the purpose of the DCFS Rule or that enforcing compliance is consistent with that purpose); ¶ 86 (misstating testimony, as demonstrated by the cited excerpt and D. Miller Dep. 29:6–14); ¶ 93 (misstating testimony, as demonstrated by V. Rowe Dep. 194:14–18 showing that Ms. Rowe could not identify by name any member of her organization affected by the rules); ¶¶ 107–10, 112–13 (misstating testimony, as demonstrated by excerpts cited); ¶¶ 125–28, 135–36, 142, 146 (citing irrelevant testimony that does not raise a material question as to the facts asserted, as demonstrated by the excerpts cited); ¶ 133 (misstating testimony, specifically that Dr. Miller's

quote was in response to a question about self-defense, not risks to children, as demonstrated by

Dr. M. Miller Dep., 209:2–23; and Dr. Miller's testimony that reducing barriers to firearm access,

such as locked versus unlocked, each independently increase risk 200 percent, as demonstrated by

*id.*, 151:17–152:10).[1]

### B. Plaintiffs' new materials—none of which they produced in discovery— cannot and do not create a genuine factual dispute.

Plaintiffs also try to create a genuine issue of fact by citing new materials: several studies,

articles, and books cited in Section III of their Response. These materials were not previously

disclosed to Defendants in discovery, they are not admissible, and they have been presented to the

Court in violation of the Local Rules. The Court should disregard Plaintiffs' factual assertions

based on these new, undisclosed materials. In addition to being procedurally improper, Plaintiffs'

new, undisclosed materials fail to create a genuine dispute about any material fact.[2]

Plaintiffs were obligated to disclose these materials during discovery under Rule

26(a)(1)(A)(ii), and failed to do so. Defendants also requested this information at the outset of

discovery, yet Plaintiffs did not produce it. *See, e.g.*, SAF Resp. to RFPs 1, 11, 12 (requesting all

documents supporting Plaintiffs' claims, including scholarly materials and other texts, attached as

**Ex. 3**). Information not produced during discovery may not be used on summary judgment. *Vega*

*v. Chicago Bd. of Educ.*, 338 F. Supp. 3d 806, 808 (N.D. Ill. 2018) (citing Fed. R. Civ. P. 37(c)(1)).

The exclusion of non-disclosed evidence is *mandatory* unless non-disclosure was justified

or harmless. *Rossi v. City of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015); Fed. R. Civ. P. 37(c)(1).

---

[1] Plaintiffs filed neither the deposition of Dr. Miller nor the deposition of Saul Cornell with their response, despite citing each. Those depositions are attached as **Ex. 1** and **Ex. 2**, respectively, for the Court's convenience.

[2] The materials the Court should ignore are all articles, books, studies, or data cited by Plaintiffs on pages 18, 21, 25, 26, 27, and 28 of Plaintiffs' Response to Defendants' Motion for Summary Judgment, ECF 63, with the exception of DCFS OIG reports, which were properly produced *by Defendants* during discovery.

Four factors guide the Court's analysis: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Allied World Spec. Ins. Co. v. SIU Physicians & Surgeons, Inc.*, No. 17-cv-03139, 2021 U.S. Dist. LEXIS 61536, at \*10 (C.D. Ill. Mar. 30, 2021).

Plaintiffs' non-disclosure was neither excusable nor harmless. First, the surprise and prejudice to the Defendants is severe. Defendants requested these materials early in discovery; Plaintiffs claimed they had none, but would supplement during expert discovery. *See, e.g.* SAF Resp. to RFP 11, attached as **Ex. 3**. They did not. Instead, they held on to this evidence—some of which has existed since March 1983—until December 21, 2021, eight months after the close of discovery. Second, Plaintiffs cannot cure this late disclosure, and any attempt to do so would significantly delay and disrupt the case. Had the studies been timely disclosed, both parties could have asked experts about them during expert discovery. Third, Plaintiffs' failure to disclose was willful: Plaintiffs failed to turn over this material while at the same time they asked for the very same types of information and documents from Defendants. *See, e.g.,* Def. Smith's Resp. to RFP 6, 11, 15, 18, attached as **Ex. 4**. These studies do not appear to be a serious attempt to support Plaintiffs' claims. Instead, Plaintiffs have essentially dumped a stack of papers at the Court's door at the last minute in the hopes of inducing the Court to infer that a material factual dispute lurks somewhere among them. But the Federal Rules and Local Rules require more than that to defeat a summary judgment motion. *See Siegel*, 612 F.3d at 937; *Kibler*, 46 F. Supp. 3d at 847.

Even if Plaintiffs had produced these materials in discovery, they would not be properly before the Court now. Substantively, they are inadmissible hearsay. *See e.g.*, *Quirin v. Lorillard Tobacco Co.*, No. 13 C 2633, 2015 U.S. Dist. LEXIS 199174, at \*33–34 (N.D. Ill. Jan. 23, 2015)

(excluding studies and articles under hearsay rule). Plaintiffs have not qualified them under a

hearsay exception, and therefore they cannot be relied upon at summary judgment. *See Carlisle v.*

*Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009) (inadmissible hearsay may not be considered on

summary judgment). These materials are thus of no value to the Court. Procedurally, the Local

Rules require that any new facts in a summary judgment response be provided in a statement of

additional material facts. Local Rule 7.1(D)(2)(b)(5). Plaintiffs filed no such statement.

For these reasons, the Court should ignore every article, book, study, or data cited by

Plaintiffs on pages 18, 21, 25, 26, 27, and 28 of Plaintiffs' Response brief.[3]

## II.  Defendants are entitled to judgment as a matter of law.

In the absence of a genuine factual dispute, Defendants' motion for summary judgment

presents a pure question of law: whether the challenged DCFS Rules violate Plaintiffs' Second

Amendment rights. They do not. As a result, Defendants are entitled to summary judgment.

### A.  Plaintiffs waived any Second Amendment right to keep unlocked and loaded guns in the home when they sought home daycare and foster care licenses.

Plaintiffs concede that constitutional rights may be waived. ECF 63 at 7. Plaintiffs have

not disputed any of the material facts necessary to find the Millers waived any right to keep loaded,

unlocked firearms at home when they sought State licenses to operate a daycare and foster care

home. *See, e.g.,* ECF 63-1 at ¶¶ 35–73. The four arguments they make to avoid the effect of their

waiver all fail as a matter of law.

*First*, Plaintiffs argue they did not waive their Second Amendment rights because the

Millers have not violated the DCFS Rules. The waiver doctrine has no such requirement (and

Plaintiffs cite none). Courts consistently hold that the waiver of a constitutional right is valid and

enforceable where the waiver is knowing and voluntary. *See, e.g.*, *Domka v. Portage Cty.*, 523

---

[3] Defendants address the substantive deficiencies of this material in § II.D, *infra*.

F.3d 776, 781 (7th Cir. 2008). Here, the record demonstrates that the Millers relinquished their rights knowingly and voluntarily (*see, e.g.,* SUMF at ¶¶ 36–44, 57–65, 67, 99–104), and thus their waiver is valid and enforceable, regardless of whether they have violated the DCFS Rules or not.

*Second*, Plaintiffs attempt to avoid the effect of their waiver by confusing waiver with standing. Plaintiffs argue that enforcing the Millers' waivers would "put the Defendants' regulations beyond review" because "no one else would have standing" to challenge these firearm storage requirements. ECF 63 at 6. But whether someone else has standing to challenge a regulation has no bearing on whether the doctrine of waiver applies to these Plaintiffs suing the Defendants in this case.

Similarly, Plaintiffs' argument that waiver cannot apply to the "right to bring a Court challenge" is undermined by decades of precedent holding that constitutional rights can be waived and that such waivers are enforceable. *See, e.g.*, *Domka*, 523 F.3d at 781; *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty.*, 149 F.3d 277, 280 (4th Cir. 1998) (collecting cases). Filing suit does not permit the Millers to undo their choice to waive their rights in order to obtain licenses from DCFS.

*Third*, Plaintiffs argue the Millers' waiver is invalid because it is an "unconstitutional condition" to require them to relinquish Second Amendment rights to obtain foster and day care home licenses. This is not so. The unconstitutional conditions doctrine does not apply where the government imposes reasonable conditions—including the surrender of constitutional rights—that are rationally related to the benefit received. *Burgess v. Lowery*, 201 F.3d 942, 947 (7th Cir. 2000) ("[C]onditions can lawfully be imposed on the receipt of a benefit…provided the conditions are reasonable."); *Bingham v. Holder*, 637 F.3d 1040, 1046 (9th Cir. 2011) ("[t]he government may condition the grant of a discretionary benefit on a waiver of rights if the condition is rationally

related to the benefit conferred.") (cleaned up); *Nat'l Amusements, Inc. v. Town of Dedham*, 43

F.3d 731, 747 (1st Cir. 1995) ("[I]f a condition is germane—that is, if the condition is sufficiently

related to the benefit—then it may validly be imposed."); *see also* Kathleen M. Sullivan,

*Unconstitutional Conditions,* 102 HARV. L. REV. 1415, 1457 (1989) ("The more germane a

condition to a benefit, the more deferential the review[.]")

Here, the record demonstrates a rational connection between the condition imposed—safe

storage of firearms in the home to prevent firearm injuries to children—and the benefit conferred,

*i.e.*, a license to care for foster children or other families' children in the home. SUMF at ¶¶ 114–

45. Plaintiffs cite to nothing in the record to the contrary. ECF 63.

Plaintiffs' invocation of *Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583 (1926) is

unavailing. Soon after *Frost*, the Supreme Court clarified that a rational relationship between the

condition and the benefit is the controlling factor in analyzing constitutional conditions.

*Stephenson v. Binford*, 287 U.S. 251, 275 (1932); *see also Parks v. Watson*, 716 F.2d 646, 652–53

(9th Cir. 1983) (describing *Frost* as requiring rational relationship).

Similarly, the conditions imposed by the DCFS Rules in this case are reasonable and

rationally related to the operation of both the foster care and day care home programs. *See Hall v.*

*Sweet*, 666 Fed. App'x 469, 477 (6th Cir. 2016) (State has "overwhelming justification in ensuring

child wellbeing is adequately protected at the locations it licenses for child care."); *Lafferty v.*

*Amundson*, No. 20CV346, ECF 77 at 13 (Wis. Cir. Ct. Washington Cty., Sept. 30 2021) (waiver

of Second Amendment rights by foster caregivers was "rationally related" to state interest in

placing foster children in "safe and secure homes."). Thus, the DCFS Rules do not impose

"unconstitutional conditions."

8

Additionally, for the unconstitutional conditions doctrine to apply, a plaintiff must allege "the government's *coercive conduct* caused it to relinquish" a constitutional right. *Keystone Montessori Sch. v. Vill. of River Forest*, 316 F. Supp. 3d 1061, 1064 (N.D. Ill. 2018) (emphasis added); *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (unconstitutional conditions doctrine prevents government from "coercing people" to give up rights). But it is undisputed the Millers were not "coerced" into relinquishing their constitutional rights. SUMF at ¶¶ 36–44, 57–65, 67, 99–104. Because the Millers were not coerced, their waiver of Second Amendment rights was not an unconstitutional condition.

*Finally*, Plaintiffs argue that the Millers' waiver is invalid because they lacked "bargaining equality" with DCFS. ECF 63 at 8. Once again, Plaintiffs misstate the law of waiver. Plaintiffs point to *Henley v. Cuyahoga Cty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 446 (6th Cir. 2005) to argue that "bargaining equality" is "required" to find waiver. ECF 63 at 8. *Henley* contains no such holding. Rather, the *Henley* court affirmed that the plaintiff had voluntarily and knowingly agreed to a confidentiality and nondisparagement clause in a settlement agreement. 141 F. App'x at 446. Likewise, *Kole v. Vill. of Norridge*, No. 11 C 3871, 2017 U.S. Dist. LEXIS 178248, at *43 (N.D. Ill. Nov. 6, 2017), which Plaintiffs also cite, did not hold that "bargaining equality" is a required element of waiver. In fact, the *Kole* court emphasized that the constitutionality of a condition imposed on a plaintiff gun store "depend[ed] on the disputed factual issue of whether and to what extent it was coerced." *Id.* at *42. Similarly, the Seventh Circuit has rejected the argument that the waiver of a constitutional right is invalid because it results from a "contract of adhesion." *United States v. Hare*, 269 F.3d 859, 862 (7th Cir. 2001).

At bottom, the Seventh Circuit requires that a waiver was made knowingly and voluntarily. *See, e.g.*, *Domka*, 523 F.3d at 781. Accordingly, summary judgment for Defendants is appropriate

because the Millers knowingly and voluntarily waived any Second Amendment right they may

have to keep loaded firearms unsecured in their home.

### B.  The uncontradicted record shows the DCFS Rules are outside the scope of the Second Amendment as a matter of history and tradition.

Plaintiffs argue that Defendants' evidence about gun regulations in early America—

including an expert witness's opinion and voluminous historical materials—fails to show that the

DCFS Rules fall outside the historical scope of the Second Amendment. ECF 63 at 10. Yet,

Plaintiffs offer no admissible evidence in support. Essentially, Plaintiffs suggest, without rebuttal

expert testimony, references to specific statutes, or citations to historical scholarship, that none of

Defendants' historical evidence relates to safely storing firearms. *Id.* at 10–11. Unsupported

statements are insufficient to create a genuine issue of material fact. At summary judgment, "the

nonmovant must present definite, competent evidence in rebuttal." *Kibler*, 46 F. Supp. 3d at 856;

*see also Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010) (Nonmovant "must come forward

with *specific facts* showing that there is a genuine issue for trial") (emphasis added). Here,

Plaintiffs ignore critical details in the record—such as Massachusetts' 1783 law that prohibited

storing a loaded firearm in a home (SUMF ¶ 109)—in favor of a broad, unsupported caricature of

Professor Cornell's expert opinion and the historical materials supporting it. Courts "need not

accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusion." *Kibler*,

46 F. Supp. 3d at 856. Consequently, summary judgment should be entered for Defendants because

Plaintiffs fail to raise a genuine issue of fact about the historical scope of the Second Amendment.

### C.  The uncontradicted record shows that the Rules are presumptively lawful regulations.

Plaintiffs argue that the Rules are not presumptively lawful regulations under *District of

Columbia v. Heller*, 554 U.S. 570 (2008). In so doing, Plaintiffs failed to address Defendants'

argument that day care homes constitute "sensitive places" and addressed only whether *foster* homes are sensitive places—an argument Defendants did not make. *Compare* ECF 63 at 12–13 ("Foster homes are not sensitive areas just because Defendants claim they are") *with* ECF 56 at 42–43 ("The Day Care Home Rule is a 'sensitive place' regulation under *Heller"*). Thus, Plaintiffs have forfeited any argument that day care homes are not "sensitive places" under *Heller*.

Plaintiffs also fail to address Defendants' argument that the Foster Home Rule is a presumptively lawful regulation because the State can control its agents carrying out government programs. ECF 56 at 43–46. Plaintiffs suggest the 400-year-old maxim that "a man's home is his castle" somehow defeats the government's power to regulate whether foster parents are permitted to care for children in the legal custody of the State—simply because those services are carried out in the home. ECF 63 at 13. This is absurd. It is well-established that the government's power over the foster care relationship outweighs foster caregivers' rights, even in the home. *See, e.g.*, *Procopio v. Johnson,* 994 F.2d 325, 330 (7th Cir.1993) (no right to a relationship with a foster child in the home). The Millers' home ceased to be a "castle" when they chose to accept children in the State's legal custody into it. Thus, summary judgment for Defendants is appropriate.

### D. The uncontradicted record shows that the DCFS Rules survive Second Amendment scrutiny.

Defendants explained in their motion that even under the most rigorous scrutiny applicable to Second Amendment challenges, the DCFS Rules are constitutional because there is a "close fit" between the Rules and a "strong public-interest justification"—the protection of children from harm. *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011); *see also* ECF 56 at § IV.B. Plaintiffs concede the protection of children is a strong public-interest justification. ECF 63 at 14,

16, 24–25. Instead, they make four sets of arguments that the fit between the Rules and the

protection of children is legally insufficient. Each of these reasons fails.[4]

*First*, Plaintiffs contend that the research cited by Defendants' experts on the link between

the presence of firearms in the home and an increased risk of suicide, homicide, and other injury

has been "debunked" by the National Research Council (NRC) of the National Academies of

Science and the Centers for Disease Control (CDC).[5] ECF 63 at 17–18.[6] But Plaintiffs have not

explained what they mean by "debunked," nor identified for the Court a single study cited by Drs.

Miller and Azrael that falls into this category. Instead, they make an undifferentiated assertion

about "[t]his research" without specifying what research they are talking about. *Id*. at 17.

Moreover, the discussion in the 2005 NRC report cited by Plaintiffs criticized the conclusions of

studies carried out from 1974 to 2001. While Drs. Miller and Azrael cite a couple of studies from

this period, the majority of the work they cite was published later, and thus the NRC report does

not address the facts or data they rely on. *See* ECF 56-14 and 56-15, at Ex. C. Further, the 2003

CDC study cited by Plaintiffs addresses various types of firearms laws, none of which are

comparable to the Rules. The CDC study and its conclusions are thus not related to the studies

relied upon by Drs. Miller and Azrael. Moreover, as with the NRC work, it predates the research

at the core of Defendants' experts' report, and therefore, again, cannot be said to have "debunked"

this later scholarship.

---

[4] Plaintiffs also disagree with Defendants as to the severity of the burden the Rules impose. *See* ECF 63 at 17. They ask the Court to disregard *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014) without citing any post-*Heller* authority on storage laws (*Heller* did not address restrictions on storage). *Id*. But even if the Court agrees with Plaintiffs as to severity, the outcome here is the same because the Rules are constitutional under even the "not quite 'strict scrutiny'" reserved for the most severe burdens on the Second Amendment. *Ezell*, 651 F.3d at 708.
[5] For the Court's convenience, the NRC and CDC materials cited by Plaintiff are attached as **Ex. 5** and **Ex. 6**, respectively.
[6] Again, neither the NRC report nor the CDC study is properly included in the factual record of this case and should be disregarded by the Court. *See* § I.B., *supra*.

*Second*, Plaintiffs argue that the data cited by Defendants' experts demonstrating the link between firearms in a home and increased risk of suicide, homicide, and other injury is not "on point" because the data does not *specifically* deal with foster children or children in day care homes *in Illinois*. ECF 63 at 28–29. This argument is unavailing. Defendants' experts relied on studies of children's exposure to firearms in the home. SUMF ¶¶ 117–18. Foster children undeniably live in homes. Children in day care homes spend time in those homes, and the same principle of exposure applies to them. *Id*. The data is thus very much on point. Plaintiffs have not explained why foster children or children in day care homes in Illinois might be different from the children in the studies relied upon, much less pointed to actual studies or evidence showing that the risks are different for such children or otherwise calling Drs. Miller and Azrael's conclusions into question.

*Third*, Plaintiffs argue that the need to protect children in foster homes and day care homes from the harms caused by firearms "does not exist." ECF 63 at 20. Plaintiffs cite reports from the Office of the Inspector General of DCFS relating to deaths of children in care. *Id*. at 18–20. Plaintiffs essentially argue that the OIG reports show that foster children (the OIG reports do not address children in day care homes) are not dying from firearms injuries in sufficient numbers to justify these Rules. This is a bizarre and callous argument. Even setting aside how many deaths of foster children would be enough for Plaintiffs to consider the DCFS Rules justified, they gloss over that some version of the Foster Home Rule has been in place for more than forty years, therefore protecting children from such incidents. ECF 56-3, Resp. #1. Plaintiffs' response is that "Defendants may speculate that this is somehow proof the system works, but none of their experts have any such information, or any basis to make such an assertion." ECF 63 at 20. This is wrong. Defendants' experts explained in careful detail why storage practices such as those required by the Foster Home Rule are likely to reduce deaths from firearms, and why getting rid of such rules will

increase harms to children. *See, e.g.*, SUMF 119–45; ECF 56 at § IV.B. To say that the absence of harm under the Rules is evidence that the Rules are not needed is illogical and defies the only material in the record on the subject.

*Fourth*, Plaintiffs argue in several ways that the use of firearms in self-defense makes people safer. *See, e.g.*, ECF 63 at 21–29. The DCFS Rules, which they say impair the ability of foster parents and day care home operators to use firearms effectively in self-defense, therefore reduce children's safety. Their conclusion is simply unsupported by any evidence. Hypothetical attacks by intruders that might be countered by the use of firearms in self-defense represent only one scenario relevant to the question of whether the Rules make children safer. Even if all of Plaintiffs' improper evidence were admissible, and all of their non-peer-reviewed studies were accurate, none of this material addresses the question of whether children for whom DCFS is responsible are safer *overall* under the Rules. Defendant's experts do address that question, however, and conclude that they are. SUMF ¶ 119. Drs. Miller and Azrael also state unequivocally that there is no peer-reviewed epidemiological data showing any "countervailing mortality benefit to children if they live in a household where firearms are present and/or accessible." SUMF ¶ 140. In other words, the data shows that even if the use of firearms in self-defense against an intruder did make children in a home safer in that single scenario (and there is no competent evidence in the record here that it does), that benefit is outweighed by the increased risks of homicide, suicide, and accidental injury that children are exposed to when they spend time in a home with a firearm. It is this overall conclusion that is relevant to and affirmative of the validity of the DCFS Rules.

Plaintiffs' expert Marty Hayes offers no competent rebuttal to these facts. Defendants have already addressed the disqualifying deficiencies in Mr. Hayes' qualifications, methods, and report in their pending motion to exclude his testimony. *See* ECF 43 and exhibits; ECF 50. But even if

Mr. Hayes' testimony were admitted, it would not preclude summary judgment because it suffers

from the same defect as Plaintiffs' other evidence: His report is myopically focused on the issue

of self-defense gun use and fails to address the net effect of firearms on children's safety—that is,

it says nothing about others risks to children related to the presence of firearms in a home.

Defendants' experts have offered the only evidence in this case that addresses the Rules'

overall effect on the safety of children in foster homes and day care homes. Their conclusion is

that children are at significantly less risk of death and injury from firearms under the Rules than

without them. Plaintiffs provide no evidence to the contrary, nor do they provide any sound basis

to reject this conclusion. Therefore, as explained in Defendants' Memorandum (ECF 56), the Rules

meet the requirements of Second Amendment scrutiny and must be upheld.

## CONCLUSION

Plaintiffs' challenge to the DCFS Rules fails as a matter of law. Defendants are entitled

to summary judgment.

Dated: January 14, 2022

<div style="margin-left: 40%;">

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

By:   /s/ Matthew V. Chimienti
      Gretchen Helfrich, #6300004
      Matthew V. Chimienti, #6312531
      Aaron P. Wenzloff, #6329093
      Assistant Attorneys General
      100 W. Randolph St., 11th Floor
      Chicago, Illinois 60601
      (312) 814-3000
      Gretchen.Helfrich@ilag.gov
      Matthew.Chimienti@ilag.gov
      Aaron.Wenzloff@ilag.gov

      *Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

I, Matthew V. Chimienti, an attorney, certify that on January 14, 2022, I caused the foregoing **Defendants' Reply in Support of Their Motion for Summary Judgment** to be electronically filed via the Court's CM/ECF system and thereby served on all counsel of record.


/s/ Matthew V. Chimienti

Assistant Attorney General