IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER J. MILLER, DARIN E. MILLER, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS STATE RIFLE ASSOCIATION, and ILLINOIS CARRY, <br><br>Plaintiffs, <br><br>v. <br><br>HEIDI E. MUELLER, in her official capacity as Director of the Illinois Department of Children and Family Services, and KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois, <br><br>Defendants. | Case No. 3:18-CV-3085 |

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, JENNIFER J. MILLER, DARIN E. MILLER, SECOND AMENDMENT FOUNDATION, INC. ("SAF"), ILLINOIS STATE RIFLE ASSOCIATION ("ISRA") and ILLINOIS CARRY ("IC"), by and through undersigned counsel, as and for their Second Amended Complaint against Defendants HEIDI E. MUELLER, in her official capacity as Director of the Illinois Department of Children and Family Services (hereinafter "IDCFS"), and KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois, allege as follows:

INTRODUCTION

1. This is an action pursuant to 42 U.S.C. § 1983 for deprivation of civil rights under color of law, which seeks equitable, declaratory, and injunctive relief

challenging the State of Illinois's prohibition on otherwise qualified Illinois residents who are day care home licensees and/or licensed foster parents.

2. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 2797 (2008), and is "fully applicable against the States," *McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010).

3. The Second Amendment also guarantees the fundamental right of public carry of a handgun for self-defense and defense of others. *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022); *see also Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).

4. However, State laws and Administrative Code sections, as well as IDCFS rules and policies, substantially prohibit day care home licensees in Illinois from the possession and carry of functional firearms for the purpose of self-defense, which violates Plaintiffs' constitutional rights under the Second Amendment.

5. The State laws and Administrative Code sections, as well as IDCFS rules and policies, also substantially prohibit licensed foster parents in Illinois from the possession and carry of functional firearms for the purpose of self-defense, which violates Plaintiffs' constitutional rights under the Second Amendment.

6. Plaintiffs seek to establish that the recognition and incorporation of the Second Amendment renders the State's restrictions on the possession and carrying of functional firearms by day care home licensees, and licensed foster parents, unconstitutional.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983, in that this action seeks to redress the deprivation, under color of the laws, statute, ordinances, rules, regulations, customs, and usages of the Defendants as they execute, administer and enforce the complained-of laws, of the rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

8. This Court has personal jurisdiction over the Defendants because, *inter alia*, they acted under the color of laws, rules, policies, customs, and/or practices of the State of Illinois and/or within the geographic confines of the State of Illinois.

9. Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants execute, administer, and enforce the complained-of laws, rules, and policies against Plaintiffs in this District, and because the events and omissions giving rise to this action are harming Plaintiffs in this District, and the State laws were enacted in the State capital in this District.

## PLAINTIFFS

10. Plaintiff Jennifer J. Miller resides with her family in Shelbyville, Illinois. She is married to co-Plaintiff Darin. She has worked as a home day care provider since 2016, Jennifer has been a day care home licensee in the State of Illinois since 2017, and plans to continue to do so in the future. Jennifer and her husband are also Illinois licensed foster parents and currently fostering two children, providing a stable environment to children without one, and plan to

continue to do so in the future. Darin and Jennifer also have one natural child in their home. Jennifer has an Illinois FOID card and a concealed carry license.

11. Jennifer operates a child care facility in her home, as that term is defined in 225 ILCS 10/2.05. Jennifer also operates a day care home, as that term is defined in 225 ILCS 10/2.18. Jennifer also has a foster family home, as that term is defined in 225 ILCS 10/2.17.

12. Plaintiff Darin E. Miller is 45 years old, and resides with his family in Shelbyville, Illinois. He is married to co-Plaintiff Jennifer. Darin was a Special Equipment Operator in a distribution center for a large producer of fiber-based packaging, pulp and paper in central Illinois for more than twenty years, until injury forced him to stop. Currently he is a student at Lake Land Community College in Mattoon, Illinois, studying Agricultural Business.

13. Darin and his wife are also Illinois licensed foster parents and currently fostering two children, providing a stable environment to children without one, and plan to continue to do so in the future. Additionally, Jennifer and Darin have one natural child in their home. Darin has an Illinois FOID card and a concealed carry license.

14. Darin has a foster family home, as that term is defined in 225 ILCS 10/2.17.

15. The Millers are allowed to possess firearms in Illinois generally, but are prohibited by the Illinois statutes and administrative code sections, JCAR rules, and IDCFS rules and policies complained-of herein from possessing loaded

functional handguns in their homes so long as they currently are day care home licensees, or plan to be day care home licensees in the future. This was verbally related to them by the IDCFS employee who conducted Jennifer's day care home license in March and April, 2018 and has been reiterated since then.

16. The Millers are also prohibited by the Illinois statutes and Administrative Code sections, JCAR rules, and IDCFS rules and policies complained-of herein from possessing loaded functional firearms in their homes so long as they currently are foster parents, or plan to be foster parents in the future.

17. The Millers would possess and carry loaded and functional handguns for self-defense and defense of family, but refrain from doing so because they fear Jennifer's day care home license being taken away from them by the State, and/or being prohibited from maintaining a day care home license in the future. They also fear their foster children being taken away from them by the State, and/or being prohibited from being foster parents in the future, all due to the Illinois statutes and administrative code sections, JCAR rules, and IDCFS rules and policies complained-of herein.

18. SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes day care home licensees residing in Illinois. SAF has over 650,000 members and supporters nationwide. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right

privately to own and possess firearms. SAF brings this action on behalf of itself and its members.

19. Members of SAF who are day care home licensees and/or foster parents in Illinois would possess and carry loaded and functional handguns for self-defense, but refrain from doing so because they fear their day care home licenses and/or foster care licenses being denied and/or revoked by the State, and/or being prohibited from being day care home licensees and/or foster parents in the future, all due to the statutes, administrative code sections, rules, and policies complained-of herein.

20. ISRA is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 23,000 members and supporters in Illinois, and many members outside the State of Illinois. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

21. Members of ISRA who are day care home licensees and/or foster parents in Illinois would possess and carry loaded and functional handguns for self-defense, but refrain from doing so because they fear their day care home licenses and/or foster care licenses being denied and/or revoked by the State, and/or being prohibited from being day care home licensees and/or foster parents in the future, all due to the statutes, administrative code sections, rules, and policies complained-of herein.

22. IC is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry has over 10,000 members and supporters in Illinois, and many members outside the State of Illinois. Illinois Carry is dedicated to the preservation of Second Amendment rights. Among Illinois Carry's purposes are educating the public about Illinois laws governing the purchase and transportation of firearms, aiding the public in every way in its power, and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

23. Members of IC who are day care home licensees and/or foster parents in Illinois would possess and carry loaded and functional handguns for self-defense, but refrain from doing so because they fear their day care home licenses and/or foster care licenses being denied and/or revoked by the State, and/or being prohibited from being day care home licensees and/or foster parents in the future, all due to the statutes, administrative code sections, rules, and policies complained-of herein.

24. Jennifer and Darin Miller are members of SAF, ISRA, and IC.

## DEFENDANTS

25. Defendant Mueller is the Director of the Illinois Department of Children and Family Services. In Mueller's official capacity, she is responsible for enforcing certain of Illinois's laws, code sections, rules, customs, practices, and policies, specifically those challenged herein. Also, in that capacity, Mueller is presently enforcing the laws, code sections, rules, customs, practices and policies

-7-

complained of in this action. Specifically, Mueller is the authority charged with processing and administering the day care home licensing system and the foster care system in Illinois. She is sued in her official capacity.

26. Defendant Raoul is the Attorney General of the State of Illinois. In Raoul's official capacity, he is responsible for executing and administering the laws of the State of Illinois, including 225 ILCS 10/7. Defendant Attorney General Raoul has enforced the challenged laws, code sections, rules, customs and practices against Plaintiffs and is in fact presently enforcing the challenged laws, code sections, rules, customs and practices against Plaintiffs. He is sued in his official capacity.

## CONSTITUTIONAL PROVISIONS

27. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

28. The Second Amendment "is fully applicable against the States." *McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010).

29. The Second Amendment includes the right to armed self-defense with a handgun, not just inside one's home but also outside. *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022); *see also Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).

30. Section 1 of the Fourteenth Amendment provides, in relevant part:

> **No state shall** make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor **deny to any person within its jurisdiction the equal protection of the laws**.

U.S. Const. amend. XIV (emphasis added).

## STATE LAW (DAY CARE)

31. Section 10/7 of the Illinois Child Care Act of 1969 (225 ILCS 10/7) states in relevant part:

> (a) The Department must prescribe and publish minimum standards for licensing that apply to the various types of facilities for child care defined in this Act and that are equally applicable to like institutions under the control of the Department and to foster family homes used by and under the direct supervision of the Department.
>
> The Department shall seek the advice and assistance of persons representative of the various types of child care facilities in establishing such standards. The standards prescribed and published under this Act take effect as provided in the Illinois Administrative Procedure Act, and are restricted to regulations pertaining to the following matters and to any rules and regulations required or permitted by any other Section of this Act:
>
> , , , ,
>
> (13) Provisions prohibiting handguns on day care home premises except in the possession of peace officers or other adults who must possess a handgun as a condition of employment and who reside on the premises of a day care home;
>
> (14) Provisions requiring that any firearm permitted on day care home premises, except handguns in the possession of peace officers, shall be kept in a disassembled state, without ammunition, in locked storage, inaccessible to children and that ammunition permitted on day care home premises shall be kept in locked storage separate from that of disassembled firearms, inaccessible to children;
>
> (15) Provisions requiring notification of parents or guardians enrolling children at a day care home of the presence in the day care home of any firearms and ammunition and of the

    arrangements for the separate, locked storage of such firearms and ammunition;

32. Per IDCFS policy and rules, Plaintiffs are also subject to the definitions, requirements, and restrictions of a "day care home" as that term is defined in Title 89, Section 406.2 of the Joint Committee of Administrative Rules ("JCAR").

33. Title 89, Section 406.8(a) of JCAR ("General Requirements for Day Care Homes") states in relevant part:

> 17) Handguns are prohibited on the premises of the day care home except in the possession of peace officers or other adults who must possess a handgun as a condition of employment and who reside in the day care home. The licensee shall post a "no firearms" sign, as described in Section 65(d) of the Firearm Concealed Carry Act [430 ILCS 66/65(d)], in a visible location where parents pick up children.
>
> 18) Any firearm, other than a handgun in the possession of a peace officer or other person as provided in subsection (a)(17), shall be kept in a disassembled state, without ammunition, in locked storage in a closet, cabinet, or other locked storage facility inaccessible to children.
>
>> A) Ammunition for such firearms shall be kept in locked storage separate from that of the disassembled firearms, inaccessible to children.
>>
>> B) The operator of the home shall notify the parents or guardian of any child accepted for care that firearms and ammunition are stored on the premises. The operator shall also notify the parents or guardian that such firearms and ammunition are locked in storage inaccessible to children. (Section 7 of the Child Care Act of 1969 [225 ILCS 10/7]) The notification need not disclose the location where the firearms and ammunition are stored.

89 IAC 406.8(a)(17), (18).

34.     Notwithstanding the above, Section 66/65 of the Illinois Firearm Concealed Carry Act (430 ILCS 66/65) states in relevant part that:

(a) A licensee under this Act shall not knowingly carry a firearm on or into:

. . .

(2) Any building, real property, and parking area under the control of a pre-school or child care facility, including any room or portion of a building under the control of a pre-school or child care facility. Nothing in this paragraph shall prevent the operator of a child care facility in a family home from owning or possessing a firearm in the home or license under this Act, if no child under child care at the home is present in the home or the firearm in the home is stored in a locked container when a child under child care at the home is present in the home.

35.     However, notwithstanding the Millers' stated willingness to comply with the requirements of 430 ILCS 66/65(a)(2), the Millers are nonetheless required to abide by the requirement that they remove any and all handguns from their home in order to receive/maintain Jennifer's day care home license, regardless of Darin's and Jennifer's valid FOID cards and CCLs. They are required to undergo an annual inspection to ensure they are in compliance with the above-stated restrictions.

36.     The Millers are fearful of losing Jennifer's day care home license if they complain or do not comply with 225 ILCS 10/7 and the JCAR/IAC sections listed in the paragraphs above.

## STATE LAW (FOSTER CARE)

37.     Section 10/7 of the Illinois Child Care Act of 1969 (225 ILCS 10/7) states in relevant part:

-11-

(a) The Department must prescribe and publish minimum standards for licensing that apply to the various types of facilities for child care defined in this Act and that are equally applicable to like institutions under the control of the Department and to foster family homes used by and under the direct supervision of the Department.

The Department shall seek the advice and assistance of persons representative of the various types of child care facilities in establishing such standards. The standards prescribed and published under this Act take effect as provided in the Illinois Administrative Procedure Act, and are restricted to regulations pertaining to the following matters and to any rules and regulations required or permitted by any other Section of this Act:

> . . . .
>
> (13) Provisions prohibiting handguns on day care home premises except in the possession of peace officers or other adults who must possess a handgun as a condition of employment and who reside on the premises of a day care home;
>
> (14) Provisions requiring that any firearm permitted on day care home premises, except handguns in the possession of peace officers, shall be kept in a disassembled state, without ammunition, in locked storage, inaccessible to children and that ammunition permitted on day care home premises shall be kept in locked storage separate from that of disassembled firearms, inaccessible to children;
>
> (15) Provisions requiring notification of parents or guardians enrolling children at a day care home of the presence in the day care home of any firearms and ammunition and of the arrangements for the separate, locked storage of such firearms and ammunition; (Emphasis added.)

38. Per Illinois' Child Care Act of 1969, Plaintiffs are subject to the definitions, requirements, and restrictions of a "foster family home" as that term is defined in 225 ILCS 10/2.17.

39. Per IDCFS policy and rules, Plaintiffs are also subject to the definitions, requirements, and restrictions of a "foster family home" as that term is defined in Title 89, Section 402.2 of the Joint Committee of Administrative Rules ("JCAR") (89 IAC 402.2).

40. Since as early as August 1, 2009, the IDCFS has had in effect (now) Rule 402.8(o), titled: General Requirements for the Foster Home, which states:

> Any and all firearms and ammunition shall be locked up at all times and kept in places inaccessible to children. No firearms possessed in violation of a State or Federal law or a local government ordinance shall be present in the home at any time. Loaded guns shall not be kept in a foster home unless required by law enforcement officers and in accordance with their law enforcement agency's safety procedures (89 IAC 402.8(o)).

41. Further, all foster parents are required to complete Form CFS 402-A, entitled "Acknowledgment of Compliance/Part 402 Licensing Standards for Foster Family Homes. Contained in CFS 402-A is "Section III. Firearms" is a recitation of Rule 402.8(g), and the requirement that the prospective foster parent make the following certification:

> I certify that there are no firearms on the premises, but will immediately notify the Licensing Representative and complete form CFS 452-2, Foster Family Firearms Arrangement, if I, or any member of the foster family home, acquires a firearm.

42. Form CFS 452-2 is entitled Foster Family Firearms Agreement ("FFFA") (attached hereto). The FFFA requires the prospective foster parents to

-13-

provide the IDCFS with a list of all firearms in the home including their location, a list of all ammunition in the home including its location that must be in locked storage separate from any firearms, and to notify IDCFS in writing if there are any changes to the provided information.

43.     The Millers were required to sign and abide to the content of the Acknowledgment of Compliance and the FFFA to continue as a foster home.

44.     In addition, when being inspected and approved to be a foster home, the caseworker, upon seeing there was not a separate lockbox for ammunition in the Miller's home, stopped the inspection to go out and buy one for them, and upon returning told the Millers that the ammunition had to be stored in the lockbox to be in compliance with the applicable rules.

45.     The Millers are fearful of losing their foster children, or being denied the ability to foster children, if they complain or do not comply with the statutes, code sections, rules, and policies listed in the paragraphs above.

## COUNT I – VIOLATION OF RIGHT TO KEEP AND BEAR FIREARMS (U.S. CONST. AMENDS. II AND XIV; 42 U.S.C. § 1983)

46.     Paragraphs 1 through 45 are realleged and incorporated herein by reference.

47.     The Millers are of "the people" who possess Second Amendment rights, per *District of Columbia v. Heller*, 554 U.S. 570, 580-81 (2008). As such, pursuant to *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), "the government now bears the burden of proof: it "must affirmatively prove that its

firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

48. The Supreme Court has therefore stated the test for addressing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.

49. Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies regulate Second Amendment conduct of foster parents and/or home daycare providers. The Millers' request to possess functional firearms to defend themselves at home, and for other lawful purposes, squares exactly with the constitutional right as defined by *Heller*. 554 U.S. at 582 ("[T]he Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."). Therefore "the Second Amendment's plain text covers [the Millers' desired] conduct," and "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126.

50. The prohibition on the Millers and other foster parents and/or home daycare providers possessing functional firearms for self-defense, as imposed by Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code

sections, JCAR Rules and IDCFS policies, is not consistent with the Nation's historical tradition of firearm regulation.

51. Therefore, the Illinois statutes and Administrative Code sections, JCAR Rules, and IDCFS policies which restrict day care home licensees the rights and privileges of possessing and carrying firearms for self-defense and defense of family based solely on their status as day care home licensees, on their face and as applied, violate the Plaintiffs' individual right to possess and carry firearms for self-defense and defense of family, both inside and outside of their home, as secured by the Second Amendment to the United States Constitution.

52. Further, the Illinois statutes and Administrative Code sections, JCAR Rules, and IDCFS policies which restrict licensed foster parents the rights and privileges of possessing and carrying firearms for self-defense and defense of family based solely on their status as foster parents, on their face and as applied, violate the Plaintiffs' individual right to possess and carry firearms for self-defense and defense of family, both inside and outside of their home, as secured by the Second Amendment to the United States Constitution.

53. Defendants' enforcement of Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies forces the Millers either to comply with the unconstitutional mandate—thereby being prevented from exercising their rights under the Second Amendment to the United States Constitution—or be subjected to losing their ability to foster children and/or operate a home daycare business.

54. Therefore, as a direct and proximate result of the above infringement and impermissible burden on the Millers' Second Amendment rights, the Millers have suffered—and continue to suffer—from an unlawful and irreparable deprivation of their fundamental constitutional right to keep and bear arms, specifically by being prohibited from possessing functional firearms for self-defense and other lawful purposes, solely due to their status as foster parents and/or home daycare operators.

55. A controversy exists as to whether the Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, which restricts day care home licensees the rights and privileges of possessing and carrying handguns for self-defense and defense of family based solely on their status as day care home licensees, is unconstitutional.

56. Further, a controversy exists as to whether Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, which restricts foster parents the rights and privileges of possessing firearms for self-defense and defense of family based solely on their status as foster parents, is unconstitutional.

57. A declaration from this Court would settle these issues.

58. A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

59. The Plaintiffs seek a declaration that Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and

IDCFS policies, which restrict day care home licensees the rights and privileges of possessing and carrying firearms for self-defense and defense of family based solely on their status as day care home licensees, on their face and as applied, are unconstitutional.

60. Further, the Plaintiffs seek a declaration that Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, which restrict licensed foster parents the rights and privileges of possessing firearms for self-defense and defense of family based solely on their status as foster parents, on their face and as applied, are unconstitutional.

61. In addition, in the absence of an injunction the unlawful statutes and Administrative Code sections, JCAR Rules, and IDCFS policies complained-of herein would continue to be enforced and would prevent the Millers, and the members of ISRA, SAF, and IC who are day care home licensees and/or licensed foster parents residing in Illinois, from possessing or carrying a functional handgun or other firearm that any otherwise-qualified Illinois residents may own and possess for defense of self or family.

62. The Plaintiffs would continue to suffer irreparable injury if the Court does not issue an injunction.

63. There is no adequate remedy at law because only a declaration and injunction, as opposed to monetary damages, would allow the Millers, and the members of ISRA, SAF, and IC who are day care home licensees and/or licensed

foster parents residing in Illinois the opportunity to possess and carry a functional handgun or other firearm for self-defense.

WHEREFORE, Plaintiffs pray that this Honorable Court:

1. Enter a declaratory judgment that the IDCFS policy of prohibiting functional firearm possession and carrying to day care home licensees and/or licensed foster parents in Illinois, and the Illinois statutory language which restricts firearms rights and privileges based on status as a day care home licensee and/or licensed foster parent, such as contained in 225 ILCS 10/7, are null and void because they infringe on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

2. Issue preliminary and permanent injunctions enjoining Defendants HEIDI E. MUELLER, as Director of the Illinois Department of Human Services, and KWAME RAOUL, as Attorney General of the State of Illinois, and their political subdivisions, including officers, agents, and employees thereof, from continuing to enforce the Illinois statutes and Administrative Code sections, JCAR Rules, and IDCFS policies which violate the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution by prohibiting functional firearm possession and carrying by day care home licensees, and/or licensed foster parents residing in Illinois based

solely on such status such as contained in 225 ILCS 10/7, including against the Plaintiffs and/or their members; and

3. Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988.

4. Grant such other and further relief, in law and equity, as the Court deems just and proper.

Dated:  October 4, 2024            Respectfully submitted,

By:   /s/ David G. Sigale
         Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com
*Attorney for Plaintiffs*