## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

JENNIFER J. MILLER, *et al*.,

        Plaintiffs,

v.

HEIDI E. MUELLER, *et al*.,

        Defendants.

Case No. 18 cv 3085

Hon. Sue E. Myerscough

Magistrate Judge Karen L. McNaught

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
### PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants Heidi E. Mueller, in her official capacity as the Director of the Illinois Department of Children and Family Services (hereinafter "DCFS"), and Kwame Raoul, in his official capacity as Illinois Attorney General, submit the following as their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint:

### INTRODUCTION

1.      This is an action pursuant to 42 U.S.C. § 1983 for deprivation of civil rights under color of law, which seeks equitable, declaratory, and injunctive relief challenging the State of Illinois's prohibition on otherwise qualified Illinois residents who are day care home licensees and/or licensed foster parents.

**ANSWER**: Defendants admit that Plaintiffs purport to bring this action under 42 U.S.C.

§ 1983, but deny that Plaintiffs state a claim for which relief can be granted. Defendants deny all

remaining allegations contained in Paragraph 1.

2.      The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 2797 (2008), and is "fully applicable against the States," *McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010).

**ANSWER**: Defendants admit that the Second Amendment concerns the individual right to

possess and carry weapons. Defendants further admit that the Second Amendment is fully

1

applicable to the states. Defendants further admit that Plaintiffs accurately quote selected portions

of the cases cited in Paragraph 2. Defendants deny all remaining allegations contained in Paragraph

2.

3.      The Second Amendment also guarantees the fundamental right of public carry of a handgun for self-defense and defense of others. *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022); *see also Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).

**ANSWER**: Defendants admit that Plaintiffs paraphrase the cases referenced in Paragraph

3 but deny that Paragraph 3 accurately describes the holding of either case. Defendants deny all

remaining allegations contained in Paragraph 3.

4.      However, State laws and Administrative Code sections, as well as IDCFS rules and policies, substantially prohibit day care home licensees in Illinois from the possession and carry of functional firearms for the purpose of self-defense, which violates Plaintiffs' constitutional rights under the Second Amendment.

**ANSWER**: Defendants deny the allegations contained in Paragraph 4.

5.      The State laws and Administrative Code sections, as well as IDCFS rules and policies, also substantially prohibit licensed foster parents in Illinois from the possession and carry of functional firearms for the purpose of self-defense, which violates Plaintiffs' constitutional rights under the Second Amendment.

**ANSWER**: Defendants deny the allegations contained in Paragraph 5.

6.      Plaintiffs seek to establish that the recognition and incorporation of the Second Amendment renders the State's restrictions on the possession and carrying of functional firearms by day care home licensees, and licensed foster parents, unconstitutional.

**ANSWER**: Defendants admit Paragraph 6 sets forth Plaintiffs' position. Defendants deny

that Plaintiffs complain of any unconstitutional conduct.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983, in that this action seeks to redress the deprivation, under color of the laws, statute, ordinances, rules, regulations, customs, and usages of the Defendants as they execute, administer and enforce the complained-of laws, of the rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

**ANSWER**: Defendants admit that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Defendants deny all remaining allegations in Paragraph 7.

8.       This Court has personal jurisdiction over the Defendants because, inter alia, they acted under the color of laws, rules, policies, customs, and/or practices of the State of Illinois and/or within the geographic confines of the State of Illinois.

**ANSWER**: Defendants admit the allegations contained in Paragraph 8.

9.       Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants execute, administer, and enforce the complained-of laws, rules, and policies against Plaintiffs in this District, and because the events and omissions giving rise to this action are harming Plaintiffs in this District, and the State laws were enacted in the State capital in this District.

**ANSWER**: Defendants admit that venue is proper pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this action are alleged to have occurred in this District. Defendants deny all remaining allegations in Paragraph 9.

## PLAINTIFFS

10.       Plaintiff Jennifer J. Miller resides with her family in Shelbyville, Illinois. She is married to co-Plaintiff Darin. She has worked as a home day care provider since 2016, Jennifer has been a day care home licensee in the State of Illinois since 2017, and plans to continue to do so in the future. Jennifer and her husband are also Illinois licensed foster parents and currently fostering two children, providing a stable environment to children without one, and plan to continue to do so in the future. Darin and Jennifer also have one natural child in their home. Jennifer has an Illinois FOID card and a concealed carry license.

**ANSWER**: Defendants admit the allegations contained in the first two sentences of Paragraph 10. Defendants admit that "Jennifer has been a day care home licensee in the State of Illinois since 2017." Defendants further admit that Plaintiffs Jennifer J. Miller and Darin Miller are licensed foster parents and are currently fostering two children. Defendants lack knowledge as to the remaining allegations in Paragraph 10.

11.       Jennifer operates a child care facility in her home, as that term is defined in 225 ILCS 10/2.05. Jennifer also operates a day care home, as that term is defined in 225 ILCS 10/2.18. Jennifer also has a foster family home, as that term is defined in 225 ILCS 10/2.17.

**ANSWER**: Defendants admit the allegations set forth in Paragraph 11.

12.     Plaintiff Darin E. Miller is 45 years old, and resides with his family in Shelbyville, Illinois. He is married to co-Plaintiff Jennifer. Darin was a Special Equipment Operator in a distribution center for a large producer of fiber-based packaging, pulp and paper in central Illinois for more than twenty years, until injury forced him to stop. Currently he is a student at Lake Land Community College in Mattoon, Illinois, studying Agricultural Business.

**ANSWER**: Defendants admit the first two sentences of this paragraph. Defendants admit

that Plaintiff Darin E. Miller was employed as a special equipment operator. Defendants lack

knowledge as to the remaining allegations set forth in Paragraph 12.

13.     Darin and his wife are also Illinois licensed foster parents and currently fostering two children, providing a stable environment to children without one, and plan to continue to do so in the future. Additionally, Jennifer and Darin have one natural child in their home. Darin has an Illinois FOID card and a concealed carry license.

**ANSWER**: Defendants admit that Plaintiffs Darin and Jennifer Miller are licensed foster

parents and are currently fostering two children. Defendants lack knowledge as to the remaining

allegations set forth in Paragraph 13.

14.     Darin has a foster family home, as that term is defined in 225 ILCS 10/2.17.

**ANSWER**: Defendants admit the allegations set forth in Paragraph 14.

15.     The Millers are allowed to possess firearms in Illinois generally, but are prohibited by the Illinois statutes and administrative code sections, JCAR rules, and IDCFS rules and policies complained-of herein from possessing loaded functional handguns in their homes so long as they currently are day care home licensees, or plan to be day care home licensees in the future. This was verbally related to them by the IDCFS employee who conducted Jennifer's day care home license in March and April, 2018 and has been reiterated since then.

**ANSWER**: Defendants are without knowledge or information sufficient to form a belief

as to the truth of whether the Millers are currently allowed to possess firearms in Illinois generally.

Defendants admit that day care home licensees must comply with all applicable Illinois statutes

and administrative code sections, and IDCFS rules and policies. Defendants are without

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

the last sentence of Paragraph 15. Defendants deny all remaining allegations contained in Paragraph 15.

16.    The Millers are also prohibited by the Illinois statutes and Administrative Code sections, JCAR rules, and IDCFS rules and policies complained-of herein from possessing loaded functional firearms in their homes so long as they currently are foster parents, or plan to be foster parents in the future.

**ANSWER**: Defendants admit that licensed foster parents must comply with all applicable Illinois statutes and administrative code sections, and IDCFS rules and policies. Defendants deny all remaining allegations contained in paragraph 16.

17.    The Millers would possess and carry loaded and functional handguns for self-defense and defense of family, but refrain from doing so because they fear Jennifer's day care home license being taken away from them by the State, and/or being prohibited from maintaining a day care home license in the future. They also fear their foster children being taken away from them by the State, and/or being prohibited from being foster parents in the future, all due to the Illinois statutes and administrative code sections, JCAR rules, and IDCFS rules and policies complained-of herein.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18.    SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes day care home licensees residing in Illinois. SAF has over 650,000 members and supporters nationwide. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms. SAF brings this action on behalf of itself and its members.

**ANSWER**: Defendants admit the allegations contained in the first and fourth sentences of Paragraph 18. Defendants admit that Plaintiff SAF purports to bring this action on behalf of itself and its members. Defendants lack knowledge or information sufficient to form a belief as to the truth of all remaining allegations contained in Paragraph 18.

19.    Members of SAF who are day care home licensees and/or foster parents in Illinois would possess and carry loaded and functional handguns for self-defense, but refrain from doing so because they fear their day care home licenses and/or foster care licenses being denied and/or revoked by the State, and/or being prohibited from being day care home licensees and/or foster

5

parents in the future, all due to the statutes, administrative code sections, rules, and policies complained-of herein.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19.

20.    ISRA is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 23,000 members and supporters in Illinois, and many members outside the State of Illinois. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

**ANSWER**: Defendants admit the allegations contained in the first and third sentences of Paragraph 20. Defendants admit that Plaintiff ISRA purports to bring this action on behalf of itself and its members. Defendants lack knowledge or information sufficient to form a belief as to the truth of all remaining allegations contained in Paragraph 20.

21.    Members of ISRA who are day care home licensees and/or foster parents in Illinois would possess and carry loaded and functional handguns for self-defense, but refrain from doing so because they fear their day care home licenses and/or foster care licenses being denied and/or revoked by the State, and/or being prohibited from being day care home licensees and/or foster parents in the future, all due to the statutes, administrative code sections, rules, and policies complained-of herein.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21.

22.    IC is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry has over 10,000 members and supporters in Illinois, and many members outside the State of Illinois. Illinois Carry is dedicated to the preservation of Second Amendment rights. Among Illinois Carry's purposes are educating the public about Illinois laws governing the purchase and transportation of firearms, aiding the public in every way in its power, and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

**ANSWER**: Defendants admit the allegations contained in the first and third sentences of Paragraph 22. Defendants lack knowledge or information sufficient to form a belief as to the truth

of all remaining allegations contained in Paragraph 22.

23.     Members of IC who are day care home licensees and/or foster parents in Illinois would possess and carry loaded and functional handguns for self-defense, but refrain from doing so because they fear their day care home licenses and/or foster care licenses being denied and/or revoked by the State, and/or being prohibited from being day care home licensees and/or foster parents in the future, all due to the statutes, administrative code sections, rules, and policies complained-of herein.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 23.

24.     Jennifer and Darin Miller are members of SAF, ISRA, and IC.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 24.

## DEFENDANTS

25.     Defendant Mueller is the Director of the Illinois Department of Children and Family Services. In Mueller's official capacity, she is responsible for enforcing certain of Illinois's laws, code sections, rules, customs, practices, and policies, specifically those challenged herein. Also, in that capacity, Mueller is presently enforcing the laws, code sections, rules, customs, practices and policies complained of in this action. Specifically, Mueller is the authority charged with processing and administering the day care home licensing system and the foster care system in Illinois. She is sued in her official capacity.

**ANSWER**: Defendants admit that Defendant Mueller is the Director of the Illinois

Department of Children and Family Services, and admit that Plaintiffs purport to sue Defendant

Mueller in her official capacity. Defendants admit that as Director of the Department, Defendant

Mueller is responsible for enforcing certain laws and administrative regulations of the State of

Illinois, as well as certain rules and policies of the Department of Children and Family Services.

Defendants further admit that as Director of the Department, Defendant Mueller is charged with

administering part of the foster care system and part of the day care home licensing system in

Illinois. Defendants deny all remaining allegations contained in Paragraph 25.

26.    Defendant Raoul is the Attorney General of the State of Illinois. In Raoul's official capacity, he is responsible for executing and administering the laws of the State of Illinois, including 225 ILCS 10/7. Defendant Attorney General Raoul has enforced the challenged laws, code sections, rules, customs and practices against Plaintiffs and is in fact presently enforcing the challenged laws, code sections, rules, customs and practices against Plaintiffs. He is sued in his official capacity.

**ANSWER**: Defendants admit that Defendant Raoul is the Attorney General of the State of

Illinois and that Plaintiffs purport to sue Defendant Raoul in his official capacity. Defendants admit

that Defendant Raoul has statutory duties defined in 15 ILCS 205/4. Defendants deny all remaining

allegations contained in Paragraph 26.

## CONSTITUTIONAL PROVISIONS

27.    The Second Amendment provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

**ANSWER**: Defendants admit that Paragraph 27 accurately quotes the Second

Amendment.

28.    The Second Amendment "is fully applicable against the States." *McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010).

**ANSWER**: Defendants admit that in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750,

130 S. Ct. 3020, 3025, 177 L. Ed. 2d 894 (2010), the Supreme Court held that "the Second

Amendment right is fully applicable to the States."

29.    The Second Amendment includes the right to armed self-defense with a handgun, not just inside one's home but also outside. *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022); *see also Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).

**ANSWER**: Defendants admit that Plaintiffs paraphrase the cases referenced in Paragraph

29 but deny that Paragraph 29 accurately describes the holding of either case. Defendants deny all

remaining allegations contained in Paragraph 29.

8

30.    Section 1 of the Fourteenth Amendment provides, in relevant part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor **deny to any person within its jurisdiction the equal protection of the laws.**

U.S. Const. amend. XIV (emphasis added).

**ANSWER**: Defendants admit that Paragraph 30 accurately quotes a portion of Section 1 of the Fourteenth Amendment.

## STATE LAW (DAY CARE)

31.    Section 10/7 of the Illinois Child Care Act of 1969 (225 ILCS 10/7) states in relevant part:

(a) The Department must prescribe and publish minimum standards for licensing that apply to the various types of facilities for child care defined in this Act and that are equally applicable to like institutions under the control of the Department and to foster family homes used by and under the direct supervision of the Department.

The Department shall seek the advice and assistance of persons representative of the various types of child care facilities in establishing such standards. The standards prescribed and published under this Act take effect as provided in the Illinois Administrative Procedure Act, and are restricted to regulations pertaining to the following matters and to any rules and regulations required or permitted by any other Section of this Act:

, , , ,

(13) Provisions prohibiting handguns on day care home premises except in the possession of peace officers or other adults who must possess a handgun as a condition of employment and who reside on the premises of a day care home;

(14) Provisions requiring that any firearm permitted on day care home premises, except handguns in the possession of peace officers, shall be kept in a disassembled state, without ammunition, in locked storage, inaccessible to children and that ammunition permitted on day care home premises shall be kept in locked storage separate from that of disassembled firearms, inaccessible to children;

(15) Provisions requiring notification of parents or guardians enrolling children at a day care home of the presence in the day care home of any

firearms and ammunition and of the arrangements for the separate, locked storage of such firearms and ammunition;

**ANSWER**: Defendants admit that Paragraph 31 accurately quotes portions of Illinois law.

Defendants deny all remaining allegations contained in Paragraph 31.

32.    Per IDCFS policy and rules, Plaintiffs are also subject to the definitions, requirements, and restrictions of a "day care home" as that term is defined in Title 89, Section 406.2 of the Joint Committee of Administrative Rules ("JCAR").

**ANSWER**: Defendants admit that Plaintiff Jennifer Miller is the holder of a home day care license and as such is subject to all laws and regulations applicable to day care homes. Defendants deny the remaining allegations contained in Paragraph 32.

33.    Title 89, Section 406.8(a) of JCAR ("General Requirements for Day Care Homes") states in relevant part:

17) Handguns are prohibited on the premises of the day care home except in the possession of peace officers or other adults who must possess a handgun as a condition of employment and who reside in the day care home. The licensee shall post a "no firearms" sign, as described in Section 65(d) of the Firearm Concealed Carry Act [430 ILCS 66/65(d)], in a visible location where parents pick up children.

18) Any firearm, other than a handgun in the possession of a peace officer or other person as provided in subsection (a)(17), shall be kept in a disassembled state, without ammunition, in locked storage in a closet, cabinet, or other locked storage facility inaccessible to children.

A)    Ammunition for such firearms shall be kept in locked storage separate from that of the disassembled firearms, inaccessible to children.

B)    The operator of the home shall notify the parents or guardian of any child accepted for care that firearms and ammunition are stored on the premises. The operator shall also notify the parents or guardian that such firearms and ammunition are locked in storage inaccessible to children. (Section 7 of the Child Care Act of 1969 [225 ILCS 10/7]) The notification need not disclose the location where the firearms and ammunition are stored.

89 IAC 406.8(a)(17), (18).

**ANSWER**: Defendants admit that Paragraph 33 accurately quotes portions of the Illinois

Administrative Code.  Defendants deny the remaining allegations of Paragraph 33.

34.    Notwithstanding the above, Section 66/65 of the Illinois Firearm Concealed Carry Act (430 ILCS 66/65) states in relevant part that:

(a) A licensee under this Act shall not knowingly carry a firearm on or into:

. . .

(2) Any building, real property, and parking area under the control of a pre-school or child care facility, including any room or portion of a building under the control of a pre-school or child care facility. Nothing in this paragraph shall prevent the operator of a child care facility in a family home from owning or possessing a firearm in the home or license under this Act, if no child under child care at the home is present in the home or the firearm in the home is stored in a locked container when a child under child care at the home is present in the home.

**ANSWER**: Defendants admit that Paragraph 34 accurately quotes a portion of the Illinois Firearm Concealed Carry Act. Defendants deny all remaining allegations contained in Paragraph 34.

35.    However, notwithstanding the Millers' stated willingness to comply with the requirements of 430 ILCS 66/65(a)(2), the Millers are nonetheless required to abide by the requirement that they remove any and all handguns from their home in order to receive/maintain Jennifer's day care home license, regardless of Darin's and Jennifer's valid FOID cards and CCLs. They are required to undergo an annual inspection to ensure they are in compliance with the above-stated restrictions.

**ANSWER**: Defendants admit Jennifer Miller is a licensed day care home operator and as such is required to abide by all laws and regulations applicable to licensed day care home operators, including laws and regulation related to firearms. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 35.

36.    The Millers are fearful of losing Jennifer's day care home license if they complain or do not comply with 225 ILCS 10/7 and the JCAR/IAC sections listed in the paragraphs above.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36.

11

## STATE LAW (FOSTER CARE)

37.     Section 10/7 of the Illinois Child Care Act of 1969 (225 ILCS 10/7) states in relevant part:

(a) The Department must prescribe and publish minimum standards for licensing that apply to the various types of facilities for child care defined in this Act and that are equally applicable to like institutions under the control of the Department and to foster family homes used by and under the direct supervision of the Department.

The Department shall seek the advice and assistance of persons representative of the various types of child care facilities in establishing such standards. The standards prescribed and published under this Act take effect as provided in the Illinois Administrative Procedure Act, and are restricted to regulations pertaining to the following matters and to any rules and regulations required or permitted by any other Section of this Act:

. . . .

(13) Provisions prohibiting handguns on day care home premises except in the possession of peace officers or other adults who must possess a handgun as a condition of employment and who reside on the premises of a day care home;

(14) Provisions requiring that any firearm permitted on day care home premises, except handguns in the possession of peace officers, shall be kept in a disassembled state, without ammunition, in locked storage, inaccessible to children and that ammunition permitted on day care home premises shall be kept in locked storage separate from that of disassembled firearms, inaccessible to children;

(15) Provisions requiring notification of parents or guardians enrolling children at a day care home of the presence in the day care home of any firearms and ammunition and of the arrangements for the separate, locked storage of such firearms and ammunition;
(Emphasis added.)

**ANSWER**: Defendants admit that Paragraph 37 accurately quotes portions of Illinois Child

Care Act of 1969. Defendants deny all remaining allegations contained in Paragraph 37.

38.     Per Illinois' Child Care Act of 1969, Plaintiffs are subject to the definitions, requirements, and restrictions of a "foster family home" as that term is defined in 225 ILCS 10/2.17.

**ANSWER**: Defendants admit that Plaintiffs Jennifer and Darin Miller are licensed foster

parents and as such are subject to all laws and regulations applicable to licensed foster parents.

Defendants deny the remaining allegations of paragraph 38.

39.    Per IDCFS policy and rules, Plaintiffs are also subject to the definitions, requirements, and restrictions of a "foster family home" as that term is defined in Title 89, Section 402.2 of the Joint Committee of Administrative Rules ("JCAR") (89 IAC 402.2).

**ANSWER**:  Defendants admit that Jennifer and Darin Miller are licensed foster parents and as such are subject to all laws and regulations applicable to licensed foster parents. Defendants deny the remaining allegations of Paragraph 39.

40.    Since as early as August 1, 2009, the IDCFS has had in effect (now) Rule 402.8(o), titled: General Requirements for the Foster Home, which states:

> Any and all firearms and ammunition shall be locked up at all times and kept in places inaccessible to children. No firearms possessed in violation of a State or Federal law or a local government ordinance shall be present in the home at any time. Loaded guns shall not be kept in a foster home unless required by law enforcement officers and in accordance with their law enforcement agency's safety procedures (89 IAC 402.8(o)).

**ANSWER**: Defendants deny the allegations set forth in Paragraph 40. Defendants admit that the Illinois Administrative Code includes Rule 402.8(o), which states:

> Any and all firearms and ammunition shall be stored and locked up separately at all times and kept in places inaccessible to children. No firearms possessed in violation of a State or federal law or a local government ordinance shall be present in the home at any time. Loaded guns shall not be kept in a foster home unless required by law enforcement officers and in accordance with their law enforcement agency's safety procedures.

89 Ill. Admin Code 402.8(o).

41.    Further, all foster parents are required to complete Form CFS 402-A, entitled "Acknowledgment of Compliance/Part 402 Licensing Standards for Foster Family Homes. Contained in CFS 402-A is "Section III. Firearms" is a recitation of Rule 402.8(g), and the requirement that the prospective foster parent make the following certification:

> I certify that there are no firearms on the premises, but will immediately notify the Licensing Representative and complete form CFS 452-2, Foster Family Firearms Arrangement, if I, or any member of the foster family home, acquires a firearm.

**ANSWER**: Defendants admit that Plaintiffs attempt to describe a Department form.

Defendants further admit that the form Plaintiffs appear to be describing is Form CFS 452-A. Defendants further admit that Form CFS 452-A is titled "Acknowledgment of Compliance/Part 402 Licensing Standards for Foster Family Homes." Defendants further admit that licensed foster parents are required to complete Form CFS 452-A. Defendants deny the allegations in Paragraph 41 to the extent they are inconsistent with Form CFS 452-A. Defendants deny all remaining allegations contained in Paragraph 41.

42.     Form CFS 452-2 is entitled Foster Family Firearms Agreement ("FFFA") (attached hereto). The FFFA requires the prospective foster parents to provide the IDCFS with a list of all firearms in the home including their location, a list of all ammunition in the home including its location that must be in locked storage separate from any firearms, and to notify IDCFS in writing if there are any changes to the provided information.

**ANSWER**: Defendants deny that Plaintiff attached any document to its Second Amended Complaint. Defendants admit that Form CFS 452-2 is titled "Foster Family Firearms Agreement" ("FFFA"), and that licensed foster parents' obligation to complete the FFFA is triggered only by certain answers given on Form CFS 452-A. Defendants admit that Plaintiffs attempt to paraphrase what the FFFA requires. Defendants deny the allegations contained in Paragraph 42 to the extent they are inconsistent with Form CFS 452-2. Defendants deny all remaining allegations contained in Paragraph 42.

43.     The Millers were required to sign and abide to the content of the Acknowledgment of Compliance and the FFFA to continue as a foster home.

**ANSWER**: Defendants admit that Plaintiffs Jennifer and Darin Miller voluntarily signed and agreed to abide by Form CFS 452-A (Acknowledgment of Compliance) and the FFFA to become licensed foster parents in Illinois. Defendants deny all remaining allegations contained in Paragraph 43.

44.     In addition, when being inspected and approved to be a foster home, the caseworker, upon seeing there was not a separate lockbox for ammunition in the Miller's home,

stopped the inspection to go out and buy one for them, and upon returning told the Millers that the ammunition had to be stored in the lockbox to be in compliance with the applicable rules.

**ANSWER**: Defendants admit that under the applicable rules ammunition must be stored in a locked container separate from firearms. Defendants deny the remaining allegations of Paragraph 44.

45.     The Millers are fearful of losing their foster children, or being denied the ability to foster children, if they complain or do not comply with the statutes, code sections, rules, and policies listed in the paragraphs above.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45.

### COUNT I – VIOLATION OF RIGHT TO KEEP AND BEAR FIREARMS (U.S. CONST. AMENDS. II AND XIV; 42 U.S.C. § 1983)

46.     Paragraphs 1 through 45 are realleged and incorporated herein by reference.

**ANSWER**: Defendants restate and reincorporate their answers to Paragraphs 1 through 45 by reference.

47.     The Millers are of "the people" who possess Second Amendment rights, per *District of Columbia v. Heller*, 554 U.S. 570, 580-81 (2008). As such, pursuant to *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), "the government now bears the burden of proof: it "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

**ANSWER**: Defendants deny Plaintiffs accurately quote a portion of *New York State Rifle & Pistol Ass'n, Inc., v. Bruen*. Defendants deny that Plaintiffs accurately describe the holding of *Bruen*. Defendants deny the remaining allegations, including the factual and legal conclusions set forth in Paragraph 47.

48.     The Supreme Court has therefore stated the test for addressing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.

**ANSWER**: Defendants admit that Plaintiffs accurately quote a portion of *New York State*

*Rifle & Pistol Ass'n, Inc., v. Bruen.* Defendants deny that Plaintiffs have accurately described the

holding of *Bruen*. Defendants deny the remaining allegations, including the factual and legal

conclusions set forth in Paragraph 48.

49.    Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies regulate Second Amendment conduct of foster parents and/or home daycare providers. The Millers' request to possess functional firearms to defend themselves at home, and for other lawful purposes, squares exactly with the constitutional right as defined by Heller. 554 U.S. at 582 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."). Therefore "the Second Amendment's plain text covers [the Millers' desired] conduct," and "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 49.

50.    The prohibition on the Millers and other foster parents and/or home daycare providers possessing functional firearms for self-defense, as imposed by Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, is not consistent with the Nation's historical tradition of firearm regulation.

**ANSWER**: Defendants deny the allegations, including the legal conclusions, set forth in

Paragraph 50.

51.    Therefore, the Illinois statutes and Administrative Code sections, JCAR Rules, and IDCFS policies which restrict day care home licensees the rights and privileges of possessing and carrying firearms for self-defense and defense of family based solely on their status as day care home licensees, on their face and as applied, violate the Plaintiffs' individual right to possess and carry firearms for self-defense and defense of family, both inside and outside of their home, as secured by the Second Amendment to the United States Constitution.

**ANSWER**: Defendants deny the allegations contained in Paragraph 51.

52.    Further, the Illinois statutes and Administrative Code sections, JCAR Rules, and IDCFS policies which restrict licensed foster parents the rights and privileges of possessing and carrying firearms for self-defense and defense of family based solely on their status as foster parents, on their face and as applied, violate the Plaintiffs' individual right to possess and carry firearms for self-defense and defense of family, both inside and outside of their home, as secured by the Second Amendment to the United States Constitution.

**ANSWER**: Defendants deny the allegations contained in Paragraph 52.

53.    Defendants' enforcement of Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies forces the Millers either

to comply with the unconstitutional mandate—thereby being prevented from exercising their rights under the Second Amendment to the United States Constitution—or be subjected to losing their ability to foster children and/or operate a home daycare business.

**ANSWER**: Defendants deny the allegations contained in Paragraph 53.

54.     Therefore, as a direct and proximate result of the above infringement and impermissible burden on the Millers' Second Amendment rights, the Millers have suffered—and continue to suffer—from an unlawful and irreparable deprivation of their fundamental constitutional right to keep and bear arms, specifically by being prohibited from possessing functional firearms for self-defense and other lawful purposes, solely due to their status as foster parents and/or home daycare operators.

**ANSWER**: Defendants deny the allegations contained in Paragraph 54.

55.     A controversy exists as to whether the Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, which restricts day care home licensees the rights and privileges of possessing and carrying handguns for self-defense and defense of family based solely on their status as day care home licensees, is unconstitutional.

**ANSWER**: Defendants deny the allegations contained in Paragraph 55.

56.     Further, a controversy exists as to whether Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, which restricts foster parents the rights and privileges of possessing firearms for self-defense and defense of family based solely on their status as foster parents, is unconstitutional.

**ANSWER**: Defendants deny the allegations contained in Paragraph 56.

57.     A declaration from this Court would settle these issues.

**ANSWER**: Defendants deny the allegations contained in Paragraph 57.

58.     A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

**ANSWER**: Defendants deny the allegations contained in Paragraph 58.

59.     The Plaintiffs seek a declaration that Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, which restrict day care home licensees the rights and privileges of possessing and carrying firearms for self-defense and defense of family based solely on their status as day care home licensees, on their face and as applied, are unconstitutional.

**ANSWER**: Defendants deny that Plaintiffs are entitled to the requested relief, and deny all remaining allegations in Paragraph 59.

60.    Further, the Plaintiffs seek a declaration that Section 10/7 of the Child Care Act, and the applicable Illinois Administrative Code sections, JCAR Rules and IDCFS policies, which restrict licensed foster parents the rights and privileges of possessing firearms for self-defense and defense of family based solely on their status as foster parents, on their face and as applied, are unconstitutional.

**ANSWER**: Defendants deny that Plaintiffs are entitled to the requested relief, and deny all remaining allegations in Paragraph 60.

61.    In addition, in the absence of an injunction the unlawful statutes and Administrative Code sections, JCAR Rules, and IDCFS policies complained-of herein would continue to be enforced and would prevent the Millers, and the members of ISRA, SAF, and IC who are day care home licensees and/or licensed foster parents residing in Illinois, from possessing or carrying a functional handgun or other firearm that any otherwise-qualified Illinois residents may own and possess for defense of self or family.

**ANSWER**: Defendants deny the allegations contained in Paragraph 61.

62.    The Plaintiffs would continue to suffer irreparable injury if the Court does not issue an injunction.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 62.

63.    There is no adequate remedy at law because only a declaration and injunction, as opposed to monetary damages, would allow the Millers, and the members of ISRA, SAF, and IC who are day care home licensees and/or licensed foster parents residing in Illinois the opportunity to possess and carry a functional handgun or other firearm for self-defense.

**ANSWER**:    Defendants deny the allegations set forth in Paragraph 63.

WHEREFORE, Plaintiffs pray that this Honorable Court:

1.    Enter a declaratory judgment that the IDCFS policy of prohibiting functional firearm possession and carrying to day care home licensees and/or licensed foster parents in Illinois, and the Illinois statutory language which restricts firearms rights and privileges based on status as a day care home licensee and/or licensed foster parent, such as contained in 225 ILCS 10/7, are null and void because they infringe on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

2.     Issue preliminary and permanent injunctions enjoining Defendants HEIDI E. MUELLER, as Director of the Illinois Department of Human Services, and KWAME RAOUL, as Attorney General of the State of Illinois, and their political subdivisions, including officers, agents, and employees thereof, from continuing to enforce the Illinois statutes and Administrative Code sections, JCAR Rules, and IDCFS policies which violate the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution by prohibiting functional firearm possession and carrying by day care home licensees, and/or licensed foster parents residing in Illinois based solely on such status such as contained in 225 ILCS 10/7, including against the Plaintiffs and/or their members; and

3.     Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988.

4.     Grant such other and further relief, in law and equity, as the Court deems just and proper.

**ANSWER**: Defendants deny that Plaintiffs are entitled to relief, and request that this Court dismiss Plaintiffs' Second Amended Complaint with prejudice.

## AFFIRMATIVE DEFENSES

For their affirmative defenses, Defendants state as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs lack standing to assert some or all of their claims. Some of the Plaintiffs have been adjudged to lack standing to bring the claims at issue in this lawsuit. *See* Order entered April 1, 2019 (Dkt. 40) in *Second Amendment Foundation, Inc. v. Walker*, C.D. Ill. No. 16-cv-2214.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by claim preclusion, because similar or identical issues have been previously litigated to final judgment by these parties in prior cases in this District.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by issue preclusion, because similar or identical issues have been previously litigated by these parties in prior cases in this District.

## FOURTH AFFIRMATIVE DEFENSE

The Eleventh Amendment prohibits Plaintiffs from recovering any money judgment against Defendants for actions undertaken in Defendants' official capacities. Because all acts or omissions allegedly attributable to Defendants in this case were undertaken in Defendants' official capacities as employees of the State of Illinois, Plaintiff's claims, nominally brought against Defendants are, in fact, a suit against the State of Illinois and could operate to control the State or subject it to liability in violation of the Eleventh Amendment.

## FIFTH AFFIRMATIVE DEFENSE

Any alleged conduct on behalf of Defendants did not violate clearly established statutory or constitutional rights of which a reasonable person would have known, and Defendants are therefore entitled to qualified immunity from civil damages.

## SIXTH AFFIRMATIVE DEFENSE

All acts or omissions allegedly attributable to Defendants in this case occurred within their official discretion as public officials. As such, Defendants are protected from liability for acts falling within their official discretion, and Defendants are entitled to common law immunity as public officials.

## SEVENTH AFFIRMATIVE DEFENSE

By applying to become licensed foster caregivers, and a licensed day care home operator, the Millers agreed to comply with the DCFS regulations and Illinois statute regarding safe firearm and ammunition storage. The Millers signed forms acknowledging that they would follow the rules and are currently complying with the rules. Thus, Plaintiffs knowingly and voluntarily waived and/or agreed to limitations on any Second Amendment right they may have to store their firearms and ammunition in a manner contrary to the rule regarding firearm and ammunition storage in

foster homes or the rule and statute regarding handguns and firearm and ammunition storage in

day care homes; to possess handguns within their day care home; or to challenge the rules, statute,

or forms related to the safe storage of firearms in foster homes and daycare homes in Illinois.

Defendants reserve the right to supplement, add to, or amend these defenses as this case

continues.

Date: November 8, 2024                              Respectfully submitted,

                                                   KWAME RAOUL
                                                   Illinois Attorney General

                                    By:    /s/ *Abigail R. Durkin*
                                           Gretchen Helfrich #6300004
                                           Deputy Chief, Special Litigation Bureau
                                           Abigail R. Durkin #6326840
                                           Assistant Attorney General
                                           115 S. LaSalle Street, 35th Fl.
                                           Chicago, IL 60603
                                           E-mail: Gretchen.Helfrich@ilag.gov
                                           E-mail: Abigail.Durkin@ilag.gov
                                           (312) 814-3000

                                           *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Abigail R. Durkin, an attorney, certify that on November 8, 2024, I caused the foregoing **Answer to Plaintiffs' Second Amended Complaint** to be electronically filed via the Court's CM/ECF system and thereby served on all counsel of record.

/s/ *Abigail R. Durkin*
Assistant Attorney General,
Special Litigation Bureau